GARVIN, RECEIVER, ET AL. *v.* RAPPAPORT ET AL.

[No. 27,324. Filed February 10, 1940.]

*Floyd W. Burns, John Rocap,* both of Indianapolis; and *Kenner & Glenn,* of Huntington, for appellants.

*Leo M. Rappaport, Albrecht R. C. Kipp, Harvey A. Grabill, William H. Krieg, Ernest R. Baltzell,* all of Indianapolis; and *Roland Obenchain,* of South Bend, for appellees.

FANSLER, J.—This is an appeal from a judgment allowing attorneys' fees out of the funds of an insolvent bank. The receiver and two of those who have judg-

ments payable out of the funds effected are appellants. The appellees, attorneys for certain claimants against the fund, presented the contentions of the claimants against objections of a general creditor in the trial court and on appeal.

The facts are not in dispute. The Meyer-Kiser Bank is being liquidated by a receiver. The assets have been reduced to cash and the total amount for distribution is $198,110.75. More than 150 persons filed claims asserting a preference as against general creditors based upon chapter 167 of the Acts of 1931. These claims aggregated $263,647.60, and it was immediately apparent that if they should be allowed there would be nothing for general creditors. The appellees in this case represented 16 of these claimants, the aggregate of whose claims amounts to $150,331.86. Thirty-four of the claimants whose claims aggregated $81,976.25 were represented by other counsel. Approximately 100 claimants with claims aggregating $31,839.56 were not represented by counsel. All of the claims were set for trial on June 4th. Prior to that time counsel for the appellant First National Bank of Huntington had prepared and filed its claim and had investigated and briefed the law involved. They attended the hearing, and, having consulted with the receiver and his attorney, it was agreed that judgment should be entered allowing the claim, and an order and decree to that effect was dictated to the court reporter with the understanding that the judge would approve the order and that it would be entered and the claim allowed. Appellants' attorneys then left the courtroom and the city of Indianapolis. It appears, or may reasonably be inferred, that the receiver and the court had reached the conclusion that all of the claims should be allowed as preferred.

At this point a general creditor appeared and filed objections to the allowance of the claims. A large number of counsel representing claimants were present in court. The judge stated to counsel that it would be impossible to hear all of them and suggested that some of their number be selected to present the arguments of the preferred claimants. It does not appear what preparation the appellees or other counsel had made, but since they were there representing their clients it must be assumed that they were all prepared to present their claims. Pursuant to the court's suggestion counsel in the courtroom designated the appellees who repre- sented the larger claimants to present arguments in support of the claims. A brief having been filed by the objector the appellees prepared and filed briefs and argued the questions involved orally before the court. The court announced its decision in favor of the claimants and the conclusion that all of the preferred claims should be allowed, but suggested that because of the importance of the questions the court desired that a test case be appealed to the Supreme Court and that action on the other claims would be deferred and their disposition determined by the result of the test case. Pursuant to this suggestion, the appellees and the receiver and his counsel, with the approval of the court, selected one of the claims represented by one of the appellees and judgment was entered therein and an appeal perfected by the receiver. The appellees briefed and argued the case in this court and the judgment was affirmed. *Garvin, Rec.,* v. *Chadwick Realty Corp.* (1937), 212 Ind. 499, 9 N. E. (2d) 268. Thereafter, upon the suggestion of the receiver that the case had been affirmed, all the claims were allowed.

Afterward the appellees filed a petition with the court asking that they be allowed compensation out of

the funds in the receiver's hands for their services in connection with the allowance of the claims. The receiver, the appellant First National Bank of Huntington, and the appellant 36th and Meridian Realty Corporation, for itself and on behalf of all other preferred creditors, answered objecting to the allowance. There was a hearing upon stipulated facts and the appellees were allowed $22,500 for their services. The appeal is from this order.

There is no contention on the part of appellants that the services rendered by appellees were not worth $22,500. The fund is insufficient to pay all preferred creditors in full so that in effect the allowance is a charge pro rata against all of the preferred creditors. It is the appellants' contention that appellees should be paid by their own clients who employed them and that the preferred claimants who had not employed the appellees, many of whom had employed other counsel who they must pay, should not be required to contribute to the compensation of appellees.

It is conceded to be the general and well established rule that each party must pay his own attorneys' fees and that an attorney cannot look for compensation to one who has not employed him, but appellees contend that the rule does not conflict with an equitable rule which they assert to be "that those who share in a benefit which has been obtained at the expense of one or a part only of their number should justly share the expenses including attorneys fees by which they are enabled to benefit." It is clear that appellees' statement is too broad. An attorney who procures a new doctrine to be announced or a statute to be declared unconstitutional cannot have compensation from all who thereafter are victorious in their cases because of it. There is a well known rule that

where an attorney for one of a class has created or secured and brought into the custody of a court of equity a fund which inures not alone to the benefit of his client, but to all others in the class he may be compensated out of the fund; and conversely, where the attorney for one of a class having an interest in a trust fund intervenes for his client and saves the fund from being disbursed or dissipated or lost, he can be compensated out of the fund, but in these latter cases there is generally a trustee or receiver or other fiduciary in charge of the fund whose duty it is to protect it, and an attorney who has a client interested in the fund may not rush in to intervene where those lawfully charged with the preservation of the fund are pursuing reasonable means to preserve it, nor may he force himself in or be forced in to create or secure a fund for a trust where those primarily charged with the duty of securing it are taking reasonable means to that end.

In the instant case the fund was extant and definite. The only controversy involved the question of whether it should be paid to those who were asserting that they were entitled to a preference or to creditors generally. The appellees, however, contend that they procured the fund to be set aside for the payment of those asserting preferred claims only and that in that sense they created a fund for the benefit of the preferred claimants. But, if it be conceded that this is true, they were not alone in asserting the rights of the preferred claimants. Each and every one of those who will participate had filed a claim and had made the assertion and the contention to the court that his claim was preferred and entitled to be paid before general creditors, and so each was asserting that all of the others were entitled to a preference and, in effect, that

the entire fund should be set aside for the purpose of paying all preferred claims. The attorneys for the appellant bank had convinced the receiver, and through him the judge, and had agreed upon an order and decree allowing their client's claim as preferred and it seems clear that the allowance of the other claims would have followed as of course but for the intervention of a general creditor with objections.

Upon the objections being filed the trial judge decided to hear argument and he suggested that some of the large array of counsel representing claimants be chosen to speak for all. That all had an equal right to be heard cannot be doubted, nor that each claimant had a right to have his claim presented by counsel of his own choosing so long as such procedure would not embarrass or impede the functioning of the court. But we think the trial judge had the right in his discretion to require that counsel choose some one or more from among them to present the questions in which they were all interested. At the court's suggestion the appellees were selected by many of the counsel present. They prepared and submitted a brief and orally argued the case. When the trial judge suggested that he desired that one case be taken to this court, other counsel were not consulted, but appellees and the receiver, with the approval of the court, selected the case for appeal and appellees successfully defended the judgment.

Appellees say that there is an implied contract of employment because attorneys representing other preferred claimants chose them to speak for all and because all accepted the benefits of their services. But the other claimants and their attorneys had no choice. The attorneys present were compelled by the court to select some from among them to speak for all.

Most mature lawyers have had experience with situations such as arose here. It is true that in such cases the convenience of the court and the orderly presentation of the case require that a few only of interested counsel must have the laboring oar, but this is generally considered a position of honor which goes by favor to the one who is thought by his brothers to be most able or to one who, because of the larger interest of his client and his greater responsibility, may be thought entitled to lead. There is reason to fear that a rule that would permit one who is chosen to take the lead under such circumstances to be compensated as though he were counsel for every claimant and every interest involved might tend to break down that good feeling which exists between lawyers at the bar and to encourage and promote unseemly and undignified contests for leadership, and courts and judges to avoid the embarrassment of such a situation might be driven to the inconvenience and delay of hearing each and every counsel and of determining each and every case separately, rather than by a test case.

We have seen no case which supports the view that attorneys selected at the court's suggestion, and for the court's convenience, from among many attorneys present in court representing separate clients to present their common views, are entitled to be compensated by the clients of all the other attorneys, nor has any authority come to our attention which supports the view that attorneys who successfully prosecute a test case to a successful conclusion are entitled to be compensated by parties who have like cases dependent on the result already pending and who are represented by attorneys of their own choosing. And it may be added that we know of no law that compels a party to employ counsel, and, there-

fore, those claimants who had filed their claims without employing counsel were entitled to have them passed on and the court had no power to appoint counsel for them at their expense. A careful examination of the many cases where compensation has been allowed for services which created or brought in a fund will disclose that they are readily distinguishable from the situation in the instant case.

The appellees have cited as additional authority the case of *Sprague* v. *Ticonic National Bank et al.* (1939), 307 U. S. 161, 166, 59 S. Ct. 777, 83 L. Ed. 1184. It is said in the opinion:

> "To be sure, the usual case is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative. The present case presents a variant of the latter situation. In her main suit the petitioner neither avowed herself to be the representative of a class nor did she automatically establish a fund in which others could participate. But in view of the consequences of stare decisis, the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds."

The only question before the court involved the jurisdiction or power of the trial court to hear and determine the petition, and the court said that the fact that the situation was different than the usual case and that the fund was created through stare decisis, rather than through a decree, did not touch the power of equity to hear and pass upon the matter. It is clear, therefore, that the decision is only authority for the proposition that the court should have entertained the position and decided the question. When the case was

remanded to the district court the opinion of the Supreme Court was interpreted as holding that there was no impediment to the allowance. It was pointed out that the proceeds of the bonds were more than enough to pay the petitioner and all others in like situation in full and that there would be a residue for general creditors of the bank. It is said:

"The fund established by the efforts of the petitioner is sufficient in amount to cover all claims under the trust including the incidental expenses of establishing it, and it is only after all obligations accompanying the trust are met that the balance is available for statutory distribution among unsecured creditors."

As we understand the opinion, the counsel fees were allowed as costs out of the amount that would revert to the unsecured creditors *and not out of the amount due those in like situation to the petitioner. Sprague et al.* v. *Ticonic National Bank et al.* (1939), 28 Fed. Supp. 229, 231. The case is unusual and, because of the many differences in facts, it cannot be considered as authority in the instant case. The petitioner was alone, as we understand it, in her effort to establish a trust in the bonds in question, while here every one of the claimants to a preference had come into court and sought an adjudication. There was enough in the fund to pay all preferred claimants in full with costs, plus the counsel fees that were allowed, with some balance over for general creditors. Here there is not enough to pay the preferred claimants in full. These differences are sufficient to distinguish the case. But a careful examination will disclose still others.

It is concluded that the court erred in making the allowance. All of the claimants to a preference had come into court, some with counsel of their own choosing and others without counsel, but each in his own

way seeking an adjudication of his claim. The action of the court in requiring that a few only of counsel present the question and in selecting a test case for the more expeditious disposition of all of the claims, cannot have the effect of burdening those who did not choose to employ counsel with the expense of counsel fees and burdening those who had employed counsel of their own choosing with the expense of paying for the services of counsel that they did not employ.

Judgment reversed, with instructions to deny the appellees' petition.

NOTE.—Reported in 25 N. E. (2d) 249.