Tanika ROBINSON and Economy
Fire & Casualty Company,
Appellant–Defendant,

v.

Eileen ZEEDYK, Appellee–Plaintiff.

No. 71A03–9306–CV–200.

Court of Appeals of Indiana,
Third District.

Dec. 15, 1993.

Rehearing Denied March 21, 1994.

Margot F. Reagan, Konopa & Murphy, P.C., South Bend, for appellant-defendant.

Daniel H. Pfeifer, Sweeney & Pfeifer, South Bend, for appellee-plaintiff.

GARRARD, Judge.

Economy Fire and Casualty Company (Economy) appeals an order of the trial court in favor of Eileen Zeedyk (Zeedyk) on a determination of policy limits.

FACTS AND PROCEDURAL HISTORY:

The facts in this case are undisputed and reveal that on May 10, 1991, a car driven by Tanika Robinson (Robinson) collided with a second vehicle in which Zeedyk was a passenger. Zeedyk sustained extensive personal injuries as a result of the accident.

At the time of the accident, Robinson was insured by State Farm Fire and Casualty Company (State Farm) with policy limits of $25,000.00 and Zeedyk was insured by Economy with underinsured motorist liability insurance in the amount of $100,-000.00. Both parties agree that Zeedyk's damages are in excess of the full amount of her underinsured policy with Economy.

Following the accident, on September 17, 1991, Zeedyk filed suit against Robinson

alleging negligence in the operation of her motor vehicle. On November 19, 1991, Economy paid $25,000.00, an amount equal to Robinson's policy limit with State Farm, directly to Zeedyk as an advance payment of the policy limits available from defendant Robinson and in order to protect its subrogation rights under IC 27-7-5-6. Zeedyk then amended her complaint on February 14, 1992 to add Economy as a defendant alleging that Economy owed Zeedyk an additional $75,000.00 in underinsured motorist liability coverage.

The record also indicates that counsel for Zeedyk, Daniel Pfeifer (Pfeifer) and counsel for Economy, Laurie Bigsby (Bigsby) agreed, with Economy's consent, to allow Pfeifer to negotiate a settlement with State Farm for the $25,000.00 representing State Farm's policy limit with Robinson. On September 14, 1992, State Farm tendered the full $25,000.00 on behalf of Robinson and, per agreement, made the draft jointly payable to Pfeifer and Economy as subrogee of Zeedyk. Shortly thereafter Pfeifer contacted Bigsby to discuss the payment of attorney's fees from the draft issued by State Farm. It was agreed that Pfeifer could retain one-third of the sum received from State Farm as his fee pursuant to IC 34-4-39-4 (now IC 34-4-41-4). This agreement was memorialized in a letter sent to Bigsby on September 17, 1992. Pfeifer forwarded the remaining amount, $16,667.67, to Economy.

Zeedyk then pursued her action against Economy for the additional $75,000.00 under her underinsured motorist policy. A dispute arose as to the exact amount due. Zeedyk alleged that the policy limit in this case was the full $100,000.00 minus the $25,000.00 tendered by State Farm under the subrogation arrangement worked out with Economy—a total of $75,000.00. Economy asserted that the applicable policy limit was the $100,000.00 minus the $25,000.00 tendered by State Farm minus the $8,333.33 in attorney's fees subtracted by Pfeifer prior to tendering the remaining $16,667.67 to Economy—a total of $66,667.67. Zeedyk filed a motion for determination of policy limits and a hearing was

held on October 15, 1992. The trial court held that Economy owed an additional $75,000.00 as its policy limit under its contract with Zeedyk and that pursuant to IC 34-4-39-4 (now IC 34-4-41-4) Economy could not deduct the $8,333.33, subtracted by Pfeifer as his attorney's fees, from this sum. Economy then filed a motion to correct errors based on this ruling which was denied on February 16, 1993.

Economy brings one issue before us on appeal which we restate as: whether the trial court erred as a matter of law in interpreting IC 34-4-39-4 (now IC 34-4-41-4) to require Economy to pay attorney's fees of $8,333.33 from the $25,000.00 tendered by State Farm and by ruling that Economy could not subtract these fees from the total sum owed to Zeedyk under its underinsured motorist policy.

DISCUSSION:

■ This case involves a question of statutory interpretation. The statutes at issue in this case are IC 27-7-5-5, IC 34-4-41-3, and IC 34-4-41-4. The pertinent portions read as follows:

IC 27-7-5-5(c) *Limitations on coverage*

The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:

(1) the difference between:

(A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and

(B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or

(2) the difference between:

(A) the total amount of damages incurred by the insured; and

(B) the amount paid by or for any person or organization liable for the insured's bodily injury.

IC 34-4-41-3 *Application of chapter*

This chapter applies to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third

party legally responsible for personal injury for which payment is made by the insurer.

IC 34–4–41–4 *Costs and expenses of asserting third party claim; payment by insurer out of amount received from insured*

An insurer claiming subrogation or reimbursement rights under this chapter shall pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim. These reasonable and necessary costs and expenses include, and are not limited, to the following:

(1) The cost of depositions.

(2) Witness fees.

(3) Attorney's fees to the lesser of the amount contracted by the insured for the insured's portion of the claim or thirty-three and one-third percent (33⅓%) of the amount of the settlement.

Economy asserts that IC 27–7–5–5, which sets the maximum amount due under its underinsured motorist liability policy with Zeedyk, is in conflict with IC 34–4–41–4, which provides that an insurer pay its pro rata share of attorney's fees out of the amount received from the insured in subrogation or reimbursement. Economy alleges that requiring it to pay attorney's fees out of the proceeds received from the settlement negotiated with State Farm effectively raises its policy ceiling from, in this case, $75,000.00 to $83,333.33 in violation of the maximum statutory limits set out in IC 27–7–5–5. We disagree.

■ First, we note that the interpretation of a statute is a question of law reserved for the courts. *Joseph v. Lake Ridge School Corp.* (1991), Ind.App., 580 N.E.2d 316, 319, *trans. denied.* It is our objective in statutory construction to determine and implement the intent of the legislature, *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281, 284, and where a statute is susceptible to a reasonable and

intelligible construction, it is the duty of this court to construe it so as to give effect and validity to each provision. *Tinder v. Music Operating, Inc.* (1957), 237 Ind. 33, 142 N.E.2d 610, 620. Where two statutes or two sets of statutes are apparently inconsistent in some respects and yet can be rationalized to give effect to both, it is this court's duty to do so. *Wright v. Gettinger* (1981), Ind., 428 N.E.2d 1212, 1219. It is only when there is an irreconcilable conflict that we will interpret the legislature to mean that one statute must give way to another. *Id.*[1] We believe the statutes at issue in this case are not irreconcilable and can be read in such a manner as to give effect to each.

■ As noted before, IC 27–7–5–5(c) limits the amount payable under an underinsured motorist policy to, in this case, the difference between the amount paid in damages to the insured by or for any person or organization liable for the insured's bodily injury, here $25,000.00, and the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy, here $100,000.00. The parties agree on this point. This statute, however, covers only the maximum amount payable *for bodily injury* under the applicable policy. Attorney's fees are completely collateral to the substantive obligations covered under this subsection. In addition, this statute makes no provision for subtracting attorney's fees from any obligation owed under an uninsured or underinsured motorist policy. The amount authorized as deductible under IC 27–7–5–5(c)(1)(A) from the per person policy limit in IC 27–7–5–5(c)(1)(B) is *the amount paid in damages to the insured.* Subsection (c)(1)(A) does not contemplate the deduction of attorney's fees, or any other collateral expenses that may in fact reduce the amount actually received by the insurer, from the per person policy limit in (c)(1)(B).

IC 34–4–41–4, on the other hand, specifically provides for the payment of attorney's fees in this circumstance. Where an

---

**1.** We also note that where there is an irreconcilable conflict between statutes, the more recent statute controls. *Houtchens v. Lane* (1965), 246

Ind. 540, 206 N.E.2d 131, 134. The most recent statute in this case is IC 34–4–41–4, effective July of 1991.

insurer claims subrogation or reimbursement rights under IC 34–4–41–3, to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for the personal injury for which payment is made by the insurer, as is the case in this action, then under IC 34–4–41–4 that insurer *shall pay, out of the amount received from the insured,* here the $25,000.00 received from State Farm, *the insurer's pro rata share of the reasonable and necessary costs and expenses, including attorney's fees,* of asserting the third party claim. This provision in essence codifies a narrow application of our generally recognized rule concerning attorney's fees.[2] This statute, therefore, is not in conflict with IC 27–7–5–5. Rather, it supplements IC 27–7–5–5 by directing that applicable attorney's fees be subtracted from the amount received from the insured.

The parties in this case do not dispute that attorney Pfeifer is owed a fee of $8,333.33 for his work in negotiating the settlement agreement with State Farm. The dispute revolves around who ought to be liable for this fee. IC 34–4–41–4 resolves this issue and in so doing does not force Economy above its maximum liability under IC 27–7–5–5. Economy merely owes attorney's fees as a collateral expense to claiming its subrogation or reimbursement rights under IC 34–4–41–3 and IC 34–4–41–4.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court is affirmed.

HOFFMAN and SHARPNACK, JJ., concur.

---

**2.** The general rule concerning attorney's fees, known as the American Rule, requires each party to a lawsuit to pay their own attorney's fees. *Garvin v. Rappaport* (1940), 216 Ind. 471, 25 N.E.2d 249, 251; *Wernke v. Halas* (1992), Ind.App., 600 N.E.2d 117, 123. The legislature may of course change this by statute or rule. *Wernke, supra* at 123. In this case, the legislature has codified a variation of the American Rule in the insurance subrogation context. IC 34–4–41–4 requires that an insurer, who claims subrogation or reimbursement rights in the proceeds of an action prosecuted by its insured, must pay its pro rata share of the reasonable costs and expenses, including attorney's fees, of asserting the action.