CITY NATIONAL BANK & TRUST CO. OF SOUTH BEND, TRUSTEE, *v.* AMERICAN NATIONAL BANK AT INDIANAPOLIS, TRUSTEE, ET AL.

[No. 27,432. Filed June 10, 1940.]

*Arnold, Chipman & Degnan,* of South Bend, for appellant.

*Doran, Manion & Dempsey,* of South Bend, for appellees.

SHAKE, J.—The appellant is trustee under a declaration of trust executed in 1928. As such trustee it holds the legal title to the Oliver Hotel in South Bend, Indiana, and the real estate upon which it is situated. The beneficial interests in said trust properties are represented by certificates held by some 130 owners and representing an original investment of $600,000. Contemporaneous with the creation of the trust, the trustee leased the above property to the Oliver Hotel Corporation on a long-term lease containing an option to purchase. For a number of years the trust was operated profitably, the trustee collecting the rentals, making necessary repairs, maintaining the insurance, and making periodical reports and disbursements to the cestuis. In 1933 the lessee defaulted in the payment of its rental, and in an effort to conserve the interests of the trust, the trustee brought about the creation of a new corporation to operate the property as a tenant. This arrangement proved unsatisfactory, and in 1935 the St. Joseph Valley Bank of Elkhart, holder of a part of the beneficial certificates, demanded of the appellant that it surcharge itself with some $60,000, for moneys unlawfully disbursed or lost by reason of its negligence or misconduct. Thereafter, the appellant began this action in St. Joseph Superior Court, No. 2, naming as defendants said St. Joseph Valley Bank, the South Bend Medical Laboratory, Inc., and the Sibley Machine & Tool Company. Each defendant was the holder of beneficial certificates, and the complaint was for a declaratory judgment adjudicating the regularity of the appellant's conduct as such trustee. While this action was pending, the said South Bend Medical Laboratory instituted an independent action against the appellant in the circuit court of said county. These actions were subsequently consolidated in the circuit

court. Issues were formed by which it was sought to remove the trustee and to charge it with $100,000 for mismanagement of the trust. On the trial of the cause the appellant was absolved of every specific charge of misconduct made against it in the pleadings. It developed from the evidence, however, that during the administration of the trust the trustee had purchased some of its own certificates, from which it had made a profit of $701.66, and when this was shown the trustee charged itself with that item. During the pendency of the action efforts were made by different parties to find tenants for the property. One proposition to rent the property was made by the Albert Pick Company, upon such terms that if the same had been accepted the trust would have become liable for payment of commissions amounting to some $23,000. This proposal was vigorously resisted by appellees' attorneys. There was evidence that they represented another interest that made a competitive offer, but appellees say that this was done for the purpose of bringing about the rejection of the proposed lease of the Pick Company. After a hearing, the court refused to authorize the acceptance of the Pick proposal in the form submitted, and the liability for said commission was deleted from the contract as finally approved. Subsequently, the appellant, as trustee, filed a claim for its services and the services of its attorneys. The appellant's claim was reduced $9,591.64 and that of the attorneys $6,235.10 by the court.

After the above matters had been concluded, the appellees herein filed a petition with the court by which they sought an allowance of $3,500 for the services rendered by their attorneys in said litigation. The petition was based upon the theory that the services of said attorneys were rendered for the protection and preser-

vation of the trust, that said services were reasonably necessary and beneficial to said trust, and that they were for the common benefit of all the holders of said trust certificates. The specific services which said attorneys are alleged to have performed were the successful resistance of the stipulation in the Pick proposal for the payment of $23,000 in commissions; the reduction of the allowances in favor of the appellant and its counsel; and the surcharging of the trustee with the item of $701.66, growing out of the certificate purchase transaction. The trial court allowed the appellees $3,000, to be paid out of the trust assets. The appellant asked for a new trial, which was denied, and it is here asserted that the decision of the trial court is contrary to law.

In support of the judgment, the appellees call attention to the fact that after the charges of negligence and misconduct had been made against the appellant in a cross-complaint of the St. Joseph Valley Bank, said bank sought to dismiss its cause of action, and that through the efforts of the appellees' attorneys the First National Bank of Orlando, Florida, was substituted as such cross-complainant; that if such substitution had not been made, the charges against the trustee would have been abandoned; that said attorneys carried the burden of the litigation and that they were the only attorneys who pressed the rejection of the Pick proposal and opposed the allowances sought by the appellant and its attorneys. It has been pointed out, however, that as to the issues presented by the cross-complaint with respect to the misconduct of the trustee, the finding and judgment was in favor of the appellant.

An analysis of the facts discloses that no assets were brought into the trust through the efforts of the appel-

lees or their attorneys by opposing the Pick contract and the allowances. If the judgment of the trial court can be sustained as it relates to these services, it must be on account of the fact that through the appellees' efforts funds already in the hands of the trustee were not dissipated or lost to the trust by reason of the successful opposition asserted against the approval of the Pick contract, and the fact that the trial court allowed the appellant and its attorneys lesser sums for their services than they asked. It has been asserted that a trust estate may not be charged with attorneys' fees for services rendered by counsel who do not represent it unless such services create assets for the trust. This statement of the rule is perhaps too narrow. It may become proper to charge a trust for the reasonable value of services rendered to preserve its assets, as, for example, when the trustee neglects or abandons his responsibility and the assets are in imminent danger of being lost. In such cases liability is sometimes based upon the theory that those rendering the necessary services are subrogated to the claims of the derelict trustee. The facts of the instant case do not bring it within these rules.

The substantial question presented for our determination may be stated in the following manner: When a court, charged with the responsibility of supervising the administration of a trust estate, has been asked to lend its approval to an imprudent contract or to make excessive allowances, may the estate subsequently be charged for the value of services voluntarily rendered by counsel representing less than all the interested parties who successfully resisted the approval of such contract or the allowance of such excessive fees? We think the question must be answered in the negative. There can be no presumption that the

St. Joseph Circuit Court would have approved the arrangement for commissions contained in the Pick proposal or have allowed appellant and its attorneys excessive fees in the absence of the intervention of the appellees' counsel. It will always be presumed that courts will act circumspectly and in accordance with the law until the contrary is made to appear. To hold otherwise would provide a convenient means of dissipating trust assets under legal sanction. If an excessive allowance was sought some interested party might intervene on his own account and, after the claim was defeated, charge the trust for his services, notwithstanding the court would not have allowed the claim in the absence of such intervention; and it is not inconceivable that unscrupulous claimants and interested parties might collude to that end to their mutual profit. There is no intimation that such was the situation in the case at bar, but we are unwilling to open the door to such possibilities. *In re Ziegler's Will* (1939), 170 Misc. 748, 11 N. Y. S. (2d) 212; 79 A. L. R. 521, annotation.

There may be some basis for an allowance in favor of the appellees for the services of their attorneys in recouping the sum of $701.66, realized by the appellant from the purchase of trust certificates and for which it did not charge itself until the facts were brought out in the hearing. If the judgment rested solely upon that circumstance, we would be disposed to sustain it as a proper exercise of the trial court's discretion, since it might be said that the assets of the trust were augmented to that extent through the services of said attorneys. Such considerations cannot in any view, however, sustain an allowance for $3,000. What we have said makes it unnecessary to notice other alleged errors.

The judgment is reversed, with directions to sustain the appellant's motion for a new trial and for further proceedings in accordance with this opinion.

Tremain, J., dissenting.

NOTE.—Reported in 24 N. E. (2d) 558.

## Dissenting Opinion.

TREMAIN, J.—I recognize the general rule that an attorney cannot recover fees for services from one who has not employed him or authorized his employment although the services may have been beneficial to such person. The latest decision of this court upon that subject is *Garvin* v. *Rappaport* (1940), 216 Ind. 471, 25 N. E. (2d) 249.

The attorneys for whose benefit the judgment of the lower court inured were employed by the American National Bank of Indianapolis and the First National Bank at Orlando, Florida, trustees of certain shareholders who owned a few units of stock of the total issued by the hotel company. The attorneys were bound to represent their clients, and, if in so doing their services inured to the benefit of all shareholders, they would not be in a position to recover from them under the general, well-recognized rule, but, as indicated by the opinion in chief, there are exceptions to this rule.

The case comes to this court on appeal from a judgment rendered by the trial court wherein an allowance was made from the general fund for the benefit of the appellees' attorneys. Their application for an allowance was made by the banks which were their employers in the joint litigation which preceded the filing of the claim for attorneys' fees. It was proper to present the claim in this manner. The allowance was asked to be made for the benefit of attorneys only. The attorneys

could have filed a claim in their own names under the decision in *Princeton Coal, etc., Co.* v. *Gilchrist* (1912), 51 Ind. App. 216, 224, 99 N. E. 426.

When the claim for the attorneys was filed it was answered by a general denial; set for hearing; a trial was had; and the only evidence offered was the testimony offered by the petitioners in support of the attorneys' claim. The trustee offered no testimony. On appeal the facts established which influenced the court in its decision depended largely upon the testimony of the witness, Mr. Doran, one of the attorneys for whose benefit the court made the allowance. He detailed the nature of the services rendered and the many ramifications of the various transactions in connection with the hotel property.

It appears that, when financial conditions became such that the trustee was unable to rent the property or operate the hotel at a profit and not able to pay dividends to stockholders, it became concerned as to its authority and filed an action in the superior court in which it asked for a declaratory judgment. This was a private trust created by contract, and, as far as appears from the record, had not been involved in court until appellant took the action indicated. Several months later one of the shareholders instituted an action in the circuit court of the same county, whereby it questioned the correctness of the appellant's representations and transactions. Finally the two cases were consolidated in the circuit court and tried together. The trial was by the court and extended over a long period, commencing in the early summer and being continued from time to time until late fall.

It seems to be conceded that during the months of the trial the Doran firm of attorneys represented the interest of stockholders and made the only objections to the

appellant's claims. The $701.66 transaction referred to in the opinion in chief was not settled and accounted for by the appellant until there had been one and one-half days of trial. The trustee was asserting that there had been no self-dealing, but, through the effort of these attorneys, self-dealing was established, which was sufficiently convincing to cause the appellant to charge itself with that amount during the progress of the trial. The appellant, trustee, was in court asking that a named sum for its services and for the services of its attorneys should be approved by the court. The Doran firm of lawyers opposed this allowance.

The appellant further reported to the court a proposed contract with the Albert Pick Company, and in connection with the reported contract asked that a large sum be allowed to a broker who secured the tenant to make the proposed lease. In opposing these matters for the benefit of all the stockholders, Mr. Doran testified that it was necessary for him to make several trips to the city of Chicago in order to secure a better proposition for the rental of the hotel premises, and through his efforts he did secure a party to make a counter proposal. In doing all of this work there were many conversations, many trips, and many telephone calls, all at the personal expense of the attorneys. The operation of the hotel property had covered a number of years, and it was necessary to secure an audit of the books, all of which required much time and labor.

Another attorney who early in the proceedings had commenced a contest of the claims of the trustee was eliminated from the case by a sale by his client of its interest in the hotel property, which sale was made under an agreement that that attorney should assist in securing an approval of the Pick contract. In order to take advantage of the pleadings filed by that attorney,

it was necessary to, and the appellees' attorneys did, go into court and ask that the action filed by the other attorney be not dismissed, but that these attorneys be permitted to prosecute that action for the benefit of shareholders. This was granted. It appears from Mr. Doran's testimony that the trustee contended in every instance that its report to the court be approved in all things, and that the Pick contract be accepted and approved. The result, however, of all of this was that there was a saving to the shareholders by a reduction of the broker's commission in the sum of $23,000. The fees of the trustee were reduced $9,591.64 and its attorneys' fee was reduced $6,235.10. To this may be added the $701.66 which had been theretofore unaccounted for by the trustee. It is not sufficient or sound to presume that the trial court would have made these reductions for the benefit of the shareholders had not the Doran firm of attorneys vigorously contested all of these claims of the trustee.

The exception to the general rule as to the allowance of attorneys' fees in such cases includes services of counsel which preserved common rights or common property in the interest of all parties concerned. It does not seem to me that there is any more reason for saying that an allowance should be made to the attorney who brings into the estate assets not theretofore accounted for than it is to allow an attorney compensation for his services where he succeeds in preventing dissipation of the assets already in the hands of the trustee. It is just as important to the shareholders to have the assets preserved as to bring into the estate other assets. A very good authority upon this exception is found in *Dreifus* v. *Colonial Bank & Trust Co.* (1911), 127 La. 1086, 54 So. 358. This case suggests that there may be exceptions to the general

rule where the services of counsel have preserved common rights or common property.

In the case at bar it seems quite clear that through the efforts of appellees, as counsel, the shareholders were benefited in the amounts above named. The appellant first brought this trust estate into court whereby it asked for instructions and the approval of its acts. Several of the shareholders appeared by counsel who did not follow through the trial. Most of the shareholders were not represented by counsel. One appeared in person and expressed his desire to abide the judgment of the court. The entire trust estate was voluntarily brought to the court by appellant, and it is out of this fund that the court made allowances for the services rendered by these attorneys. The court was fully advised as to all the services they had rendered. That the attorneys rendered valuable services is not questioned. Their right to recover is based upon an exception to the general rule, that the attorney must look to the one who employs him for his compensation. When the trust estate is brought before the court, and the court is called upon to approve or disapprove certain acts, to hear all contests in connection therewith, and is in possession of all the facts relative to the rights of the parties, the question then belongs rather to the equitable power of the court in distributing the fund than to actual contract. While the Doran firm had a contract with their clients to perform certain work, the court possessed equitable power, with the fund in court, to make such allowance to these attorneys as in equity and justice they were entitled. 7 C. J. S. 1096, Attorney and Client § 193, lays down the rule:

" . . . where a fund is brought into a court of equity through the services of an attorney who looks to such fund alone for his compensation,

or from which alone he is entitled to compensation, he is regarded as the equitable owner of the fund to the extent of the reasonable value of his services, and the court administering the fund will intervene for his protection and award him a reasonable compensation to be paid out of the fund."

Said section 193 further states:

"The power of the court to award such compensation out of the fund, is impersonal, and acts only on the res, when within the custody and control of the court. The allowance of the fee out of the fund is within the judicial discretion of the court."

The same authority on page 1098 lays down the rule:

"An attorney who renders services in recovering or *preserving* a fund, in which a number of persons are interested, may in equity be allowed his compensation out of the whole fund, only where his services are rendered on behalf of, and are a benefit to, the common fund. If he acts only for particular interests, his right to an allowance, ordinarily, extends only to the part of the fund which belongs to those whom he represents. . . .

"If, however, the attorney's services, although employed by a part only of the persons interested, are for the benefit of all and have protected or *preserved* the whole estate or fund, his compensation may be allowed therefrom, where the other persons interested have stood by without counsel and will reap the benefits of such services." (My italics.)

Many authorities are cited in support of the text.

It is further stated as a rule that the mere fact, that some of the persons interested have employed counsel and opposed the suit which has benefited them, will not prevent their interest from being subjected to the payment of reasonable compensation to counsel who has succeeded in recovering or *preserving* the fund which is brought into the custody of the court. Under

such circumstances a court of equity, with the entire trust estate before it, may exercise its discretion concerning allowances made to an attorney who has rendered valuable services for the benefit of the entire estate.

There is no showing that any other attorney participated or assisted in the trial. I do not think that it is any answer to the question to presume that the trial court might have ordered the appellant as a trustee to reduce its charges, its attorney's fee, and eliminate the brokerage commission, or account for the $701.66. No presumption can be indulged to that effect. In an action of this nature, the decision of the court, sitting as a court of equity and exercising its sound judicial discretion, should not be disturbed upon appeal unless it is clearly shown that there has been an abuse of discretion, or that the allowance made is contrary to the principles of law.

I am firmly of the belief that the appellees in this case brought themselves well within the exceptions to the general rule. They asked for an allowance of $3,500. They introduced witnesses to testify as to the value of their services. The court could have allowed $4,000 and been sustained by the testimony, but, having heard the testimony, being fully advised as to all prior transactions in connection with the trust estate, it was within the court's discretion to order that the attorneys be allowed a fee of $3,000. I think the judgment should have been affirmed.

NOTE.—Reported in 27 N. E. (2d) 764.