ROBISON ET AL. *v.* ELSTON BANK & TRUST COMPANY ET AL.

[No. 16,846.   Filed May 4, 1943.   Rehearing denied June 22, 1943. Transfer denied September 17, 1943.]

634

*W. J. Sprow* and *Selwyn F. Husted,* both of Crawfordsville, *Ryan & Ryan,* and *Robison & Robison,* all of Frankfort, for appellants.

*Foley & Foley,* and *Harding & Harding,* all of Crawfordsville, for appellees.

DRAPER, J.—This was an action brought by Elston Bank & Trust Company, trustee under the will of Clara R. Crawford for Alexander M. Crawford and Lydia M. Crawford against Anna Clara Robison, Alexandria Maria Crawford, John McKittrick Crawford, and Alex-

ander M. Crawford under a pleading entitled "Petition to construe provisions of Will and to instruct Trustee." The appellee Alexandria Maria Crawford was defaulted. The appellants Anna Clara Robison and John McKittrick Crawford filed answer in denial to the petition of the appellee bank and a paragraph denominated a cross-complaint challenging the legality of certain acts of the trustee in the administration of the estate. Alexander M. Crawford filed a petition showing that he was without funds and requesting the court to permit him to employ an attorney to represent him and to allow compensation therefor to said attorney from the *corpus* of the trust. Lydia M. Crawford, life beneficiary, was not made a party.

Upon proper request the court found the facts specially and stated his conclusions of law thereon. The errors relied upon for reversal are that the court erred (1) in its conclusions of law and (2) in overruling appellants' motion for new trial, which motion asserts that the decision of the court is (1) not sustained by sufficient evidence and (2) is contrary to law. The case revolves principally around the last paragraph of Item J of the will of Clara R. Crawford, which reads as follows:

"In case either the said Alexander M. Crawford or Lydia M. Crawford should be stricken by some serious illness or disease, or overtaken by some accident, misfortune or disaster and require for his or her care, attendance or support a sum or sums in excess of all of his or her income provided for in this will and from all other sources derived, then and in that event and as often as the occasion may occur I authorize and direct my said trustee for the one so stricken or overtaken to provide for such emergency out of the principal of his or her said fund if in the judgment of the said trustee the same is proper and reasonably required for his or her welfare and proper care."

The will otherwise provides, in so far as it is of interest here, that there is given to the trustee in trust, of the property of the testator at the time of her death the amount of $65,000 in value thereof, to be selected by the trustee "to be held, managed, rented and invested from time to time when and as need be reinvested by said Trustee . . . for the advantage and benefit of my nephew, Alexander M. Crawford, in such good and productive bonds, loans, secured by first mortgage upon productive real estate, or such other first class securities as will produce a sure and regular income, the whole net income and interest . . . shall be devoted solely to the support, maintenance and enjoyment of the said Alexander M. Crawford, and shall be paid over to said Alexander M. Crawford for and during his natural life quarterly or semi-annually, as may be conveniently done, on his own receipt, and without being subject in any degree or to any extent to the order, intervention or control of any person or any creditor existing or hereinafter to exist, or to any writ, order, decree or process of any court, and the said income and support shall not be anticipated, sold, transferred or assigned by him, in whole or in part, my object being to secure to my said nephew during his natural life the use and enjoyment of all of said income of said property and fund for his support, maintenance and enjoyment beyond the control of any person or creditor or the judgment, order or process of any court." Property of the value of $85,000 was likewise and upon the same conditions given to said trustee in trust for the use and benefit of Lydia M. Crawford. The will further provided that Alexander M. Crawford's children should participate as remaindermen under the conditions and in the manner specified in said will.

For a proper understanding of this case it should be

stated that Clara R. Crawford executed the will in question in 1920 and died in the year 1923. Alexander M. Crawford and Lydia M. Crawford are brother and sister and the nephew and niece of Clara R. Crawford. Anna C. Crawford was the mother of Alexander and Lydia and died in 1939. Dorothy M. Crawford was the first wife of Alexander. Anna Clara Robison, Alexandria Maria Crawford and John McKittrick Crawford, now each of full age, are the children of Alexander and Dorothy.

The court made 46 findings of fact and stated 16 conclusions of law thereon.

Stated as briefly as possible the court found: that Clara R. Crawford died testate on October 26, 1923, leaving the will in question. On December 30, 1925, Elston Bank & Trust Company, hereinafter called the trustee, qualified as such and took over assets of the estate appraised at $150,319 pursuant to the terms of the will. In the fall of 1926 Alexander, 46 years of age, married and the father of the three children, was embarrassed financially and has ever since depended for his livelihood upon this trust and the charity and assistance of his mother. In the early part of 1927 Alexander was in the physical and mental condition hereinafter mentioned and was taken by his wife to an eastern hospital, where he remained about one month. All facts hereinafter referred to relative to his then condition were reported to the trustee and the entire Crawford family beseeched it to provide funds to the extent of $10,000 to establish a home for Alexander and his family in California and assured the trustee that they believed that an emergency requiring the use of a portion of the principal of the trust now obtained. The trustee was further advised that Alexander was

without funds other than the income from the trust and the trustee on September 27, 1927, filed its petition in the Circuit Court reciting his physical and mental condition, his need for outdoor life in California, the insufficiency of his income from the trust and other sources, and its belief that an emergency existed under the terms of the will. The court heard evidence and entered its order authorizing the trustee to advance the sum of $10,000 to Alexander, and the sum was accordingly advanced. The family and one Jarvis T. Quail selected and purchased a site for $7,615.50 and a $12,000 home was built thereon, the intention being to raise avocados, and at the time the property appeared to be valuable and the business likely to be profitable.

Until early in 1930 Alexander and his family lived there and Jarvis lived with them much of the time. During that period the trustee received extremely pessimistic reports concerning Alexander's condition and lack of progress and was advised that further assistance from the trust fund was necessary to save Alexander from confinement in an institution, and that the foreclosure of liens against the property was imminent unless help was forthcoming.

Unknown to Alexander the house had been built on a portion of the real estate owned by Dorothy and mortgaged for $4,000. By December, 1929, the mortgage was in default, taxes were delinquent, irrigation assessments were delinquent, the payments due for planting and care of the trees were delinquent, and on March 30, 1930, the delinquencies exceeded $11,000. Foreclosures were threatened and Alexander was without funds and his mother unable to advance further funds.

Thereupon, in March, 1930, F. G. Davidson, attorney for the trustee, and member of its board of directors,

went to California to investigate the situation and if possible save the property and the investment therein. He found the delinquencies to amount to $11,585.77 and Alexander to be without funds or the possibility of help from other sources. Careful investigation disclosed that the property was reasonably worth $30,000, and to save the property and believing it could thus do so, the trustee paid the delinquencies and took title to the property in the name of a California trustee for the benefit of this trustee, because under California law this trustee could not take title thereto. Being reliably informed that the property was reasonably worth $30,000, the trustee believed that in taking over the property it was recapturing the original $10,000 advanced as well as the $13,344.29 expended to secure the property and they credited Alexander with the difference of $6,655.41 to partially offset certain "advancements."

In May, 1930, Dorothy obtained a divorce and two days later remarried. In 1935 and 1936 the trustee on petition and order expended $1,000 for taxes and operating expenses of the real estate. On January 20, 1930, the trustee reported to the administering court all of its doings from the inception of the trust to that date, which report was examined and approved, and on May 18, 1935, said trustee filed a more detailed report covering the period from the inception of the trust to January 15, 1935, said reports detailing all income and expenditures and showing an advancement to Lydia and reciting the acquisition of the California property and the setting up of the same as a portion of the *corpus* of the trust at a value of $30,000, and said report was approved.

The raising of avocados proved to be unprofitable and a severe winter destroyed many trees; the advis-

ability of retaining the property as a trust investment was questionable and in 1937 trustee's trust officer and the judge of the Circuit Court went to California to investigate the situation. They found the real estate depreciated in value and the trustee decided to sell the real estate and upon petition made and order entered by the court it was sold for $12,500 cash, the full market value thereof, which amount went into the *corpus* of the trust.

Among the assets coming into the hands of the trustee were certain shares of Elston National Bank stock and of Farmers-Merchants & Clements Trust Company stock. Thereafter these institutions merged into Elston Bank & Trust Company and new stock was issued in lieu of the original shares. Thereafter the stock was reduced and the value depreciated, and said stock continued to be carried as a trust asset.

On December 16, 1938, the trustee filed its current report with vouchers covering the period from January 15, 1935, to October 1, 1938, to which report Anna Clara Robison filed exceptions and on the same day Alexander filed his petition for an advance of $5,000 to go into the candy business. At the time of the trial Alexander was 60 years of age, in poor health but improved mentally, was without business experience, had never been gainfully employed, never did work of any kind, was remarried but had no income except from this trust and had been living on charity since May, 1938.

Alexander's mother died January 28, 1939, leaving a will charging Alexander with advancements so that he received nothing from her estate. At the time of the trial Lydia was 53 years of age and a physically helpless invalid.

The court found that the trustee's acts from the in-

ception of the trust to October 1, 1938, as set out in its reports, were valid and proper and fully warranted and authorized under the terms of the will, and that said trustee has exercised sound judgment and discretion in the administration of the trust and that all its acts and doings should be confirmed; that the trustee has acted honestly and in good faith and has exercised its careful and best judgment in the administration of the trust. That all funds furnished· or advanced, whether from principal or income, were made necessary by the emergency and were proper and reasonably required for Alexander's welfare and proper care, and that all expenditures made for Lydia, both of *corpus* or advancements in anticipation of income, were necessary and proper. That in participating as a stockholder in the bank merger and accepting new stock in the merged corporation and thereafter participating as a stockholder the trustee acted in good faith and in the best interests of the trust. That an attorney should represent Alexander in this proceeding and be paid $500 for his services. That no funds should be advanced to enable Alexander to engage in the candy business, and that it would require $100 per month to maintain and support him in keeping with his accustomed standards so long as he is not employed. That the value of the assets of the trust have depreciated and the income reduced. That the payment of the $10,000 was justifiably made directly to Alexander in good faith after careful investigation and after satisfying itself that his condition was such as to require it to be made from the *corpus* and was used in the purchase of the land and in necessary living expenses. That Alexander's mother had voluntarily contributed large sums but that the trustee did not have knowledge of the extent thereof. That the trustee after taking

over the property and before disposing of it but while Alexander continued to operate and live on it, paid out for the preservation of the property and the payment of taxes and other items the sum of $4,231.10, Alexander retaining the income from the property.

The court for its conclusions of law stated that the law is with the trustee and that the trustee is entitled to have the will construed by the court, and to have the court pass upon all questions of the investment and reinvestment of the trust funds and the expenditures and disposal thereof, both of income and *corpus,* determined and either approved or disapproved and confirmed or set aside.

That the trustee has complete discretion as to the investment and reinvestment of the trust funds and property and the carrying thereof in the original form in which received, subject only to the limitations contained in the will, and that its exercise of discretion in that respect in the absence of fraud or bad faith or gross abuse, is not reviewable by the court.

That by the terms of the will the exercise of discretion by the trustee in the investment and reinvestment of the funds and in the carrying of the investments and in the disposal thereof and in the payment and distribution of funds, whether of income or *corpus,* is not subject to the order, intervention or control of the defendants or cross-complainants, or any of them.

That the determination of the question of the emergency mentioned in the will is entirely within the fair discretion of the trustee, and in the absence of bad faith, fraud or abuse is not subject to review by the court, and that in determining that such an emergency had arisen, the trustee acted in good faith and without fraud and has not abused or exceeded its discretion.

That the taking over of the California property and

placing it in the *corpus* of the trust and the expenditures made in preserving and operating it, the allocation to the *corpus* of the sum of $6,655.71 and the taking of title to it in the name of the California corporation, were proper acts taken in the sound and valid discretion of the trustee, and was done in good faith and under the belief that the same was for the benefit and advantage of the trust.

That the sale of the California property was within the powers and discretion of the trustee and was made in good faith and in the honest belief that it was for the beneficial interest of the trust. That the advances to the life beneficiaries of sums in anticipation of income and the charging thereof against anticipated income was proper and that the trustee is entitled to reimburse itself as to such advances from further income as the same accrues, and that it was in the fair discretion of the trustee, acting in good faith, to allocate any of such advanced expenditures to the *corpus* of the trust and to make the expenditures for the benefit of the proper *cestui que* trust if and when it is determined in good faith that such expenditure comes within the provisions of Item J of the will.

As to items asserted to have been allocated to income which should be treated as *corpus,* that the trustee is not required to charge itself with any of these items but may charge them against losses sustained on other *corpus* items in the trust.

That maintaining in the trust the investment in the bank stocks and the merging of it in the stock of this trustee was within the discretion of the trustee and was done in good faith and for the beneficial interest of the trust and the trustee may charge off the depreciation in such stock and from time to time charge the same down to actual value and the trustee is not to be

charged with loss because of such item in carrying the same as an investment.

That under Item J of the will the trustee is not limited to support and maintenance of Alexander alone but may provide such care and attendance as will enable him to maintain his family dependent upon him and for whose support he is chargeable by law, all in accordance with his station in life.

That the trustee should not furnish funds to enable Alexander to engage in the candy business, and that the trustee is authorized to pay to Alexander's attorney compensation not to exceed $500.

That the cross-complainants may recover nothing under their cross-complaint. That nothing has accrued or will accrue to the trustee by reason of their objections and that no allowance should be made for their attorneys.

Judgment was rendered as follows:

1. "That all the acts of the trustee in the trust, and in the management and operation thereof, and in the investment and reinvestment of funds and the carrying of properties and investments therein, and the expenditures of funds both of income and corpus, as shown in the findings and in the various reports and accounts in its trust filed by the Trustee in this Court, and especially in its last partial report now pending as filed herein December 16, 1938, are all approved and confirmed and are adjudged wholly in accord with the provisions of the will of Clara R. Crawford in establishing the trust involved.

2. "That the trustee has at all times had the discretion, right and authority to manage and operate the trust as shown in its reports and to carry the investments and reinvestments as therein shown; and to pay out the expenditures in its said reports shown, both from the corpus and the income of the trust; and that all of the acts of the trustee have been in good faith, and without fraud,

and without abuse of its discretion; and the trustee has at all times used and exercised its prudent judgment in the premises.

3. "It is further adjudged and decreed that the trustee has entire discretion, free from any control, order, direction or interference from the Court, to carry out the provisions of the last paragraph of section J of the will of Clara R. Crawford, in providing out of the corpus of the trust, necessary funds for the proper support and maintenance and care of Alexander M. Crawford and Lydia M. Crawford whenever in its sound judgment and in good faith the trustee is of the opinion that the conditions set forth in the aforesaid paragraph of section J exist.

4. "That the cross-complainants, Anna Clara Robison and John McKittrick Crawford, take nothing by their cross-complaint or under their objections herein; and that the trustee plaintiff recover from Anna Clara Robison and John McKittrick Crawford, their costs herein laid out and expended taxed at $————. That trustee is not authorized to advance any funds to Alex. M. Crawford for candy making enterprise. That trustee is authorized to pay Charles E. McCabe for services rendered in this cause for Alex. M. Crawford, the sum of five hundred ($500.00) Dollars."

It is contended by the appellant that the clause in question does not give the trustee discretion to determine if the life beneficiaries have been overtaken or stricken but that the emergency must in fact exist and that the circumstances did not justify the use under the clause of any part of the principal of the trust fund on behalf of either of the life beneficiaries and if it did, the continued use of it for that purpose is unlawful.

The purpose and intention of the testator in making the instrument in question is of controlling importance and if the terms of the instrument are not plain and unambiguous, such purpose and intent may be arrived at by considering the circumstances

under which the instrument was executed. *McNew, et al.* v. *Vert* (1909), 43 Ind. App. 83, 86 N. E. 969.

We are convinced that the primary and controlling purpose of the testator was to provide for the life beneficiaries, whose weaknesses, failings and probable future requirements were known to her, such care, attention and support as was reasonably required to provide for their welfare so long as they might live, having in mind their station in life and the size of the fund.

Under the peculiar wording of the clause in question it is necessary, before any part of the principal may be used, that the beneficiary must not only have suffered some misfortune or disaster, but he must also require for his support and care sums in excess of the income from the trust and from other sources, and given these facts, portions of the principal may yet be used only if the same is proper and reasonably required in the judgment of the trustee. Knowledge concerning the income from the trust would be exclusive to the trustee and it seems apparent to us that the determination of the whole question of the necessity and extent of the use of principal was intended to be left to the discretion of the trustee.

In this case the trustee determined that it was necessary and proper to use a portion of the principal for the purpose mentioned and unless it has been guilty of bad faith or has in some manner abused or unreasonably exercised its discretion the court will not interfere; Bogart, Trusts and Trustees, Vol. III, § 560; *Matter of Hilton,* 174 App. Div. 193, 160 N. Y. S. 55; *Martin* v. *McCune* (1925), 318 Ill. 585, 149 N. E. 489; *Kimball* v. *Blanchard* (1906), 101 Me. 383, 64 A. 645; for where a trustee has been vested with discretion he will not be disturbed in the reasonable exercise

thereof, but where there is a failure to exercise such discretion in a reasonable manner the courts will intervene. *Thompson* v. *Denny, Trustee, et al.* (1922), 78 Ind. App. 257, 135 N. E. 260; Restatement of the Law, Trusts Vol. I, § 187. With these rules in mind we examine the factual situation.

The record shows that Alexander was never too alert mentally. In the fall of 1926 his wife advised him of her marital unhappiness and suggested a separation. This surprised and shocked him. He feared the breaking up of his family and became morose and despondent. Early in 1927 at the instance of his wife he sought medical advice. Eminent physicians, largely upon information furnished by his wife, pronounced him to be afflicted with dementia praecox and becoming progressively worse with no prospect of recovery. The barred windows of the hospital psychiatric ward distressed him. He had a complete nervous breakdown, feared for his life and that he might harm his family. He was advised to go to California, it being thought that a quiet outdoor life might retard the progress of the malady. His inheritance had been largely dissipated by others and he was without funds or the ability to earn them by either mental or physical exertion.

Some doubt exists in the mind of the court as to whether Alexander was ever actually afflicted with dementia praecox, but those concerned had good reason to believe that he was to some extent so afflicted and we believe that it may sometimes be a greater misfortune and more productive of disastrous results for one to have the mistaken belief that he is afflicted with a serious disease than to be unwittingly actually afflicted with it. These and other facts and circumstances shown by the record which are not necessary or proper to be set out in this opinion

impel us to believe that Alexander was overtaken by misfortune or disaster within the meaning of the clause in question and that the use of some part of the principal of the fund was justified.

Lydia Crawford suffered from spastic paralysis at or before birth. She was 53 years old at the time of the trial and has been a physically helpless invalid all of her life, though mentally alert. She has been unable to earn for herself a livelihood and has required and been accustomed to constant care and attention throughout life. The court found that necessities for her proper care and welfare have exceeded the income from the trust and from other sources, and we can think of no greater misfortune that might befall her than to find herself financially unable to procure the care and attention which she requires. It must be remembered that the testatrix in the clause in question had in mind her "proper care and attendance" as well as her support. For this physically helpless beneficiary to be overtaken by financial want was in our opinion a misfortune disastrous indeed and so we believe that she, too, was overtaken by misfortune or disaster within the meaning of the clause in question and in need of assistance from the principal of the fund. We believe that the clause in question contemplated more than mental or physical misfortune or disaster, but included also financial misfortune or disaster and that, so long as the emergency arising from financial misfortune or disaster continues and as often as it recurs the life beneficiaries are entitled to be provided for from the principal of his or her fund if their income from the trust and other sources are inadequate for the purpose.

It is said that the advancement of $10,000 to Alexander, a known spendthrift who was afflicted with

dementia praecox, was negligence on the part of the trustee which would destroy any discretion it might have. The evidence does not convince us that Alexander was a spendthrift. It would indicate that he was married to a spendthrift wife. Before acting the trustee submitted the question to the administering court and the court heard evidence on the subject, found that an emergency existed requiring an advancement of not to exceed $10,000 and authorized payment of it to Alexander. One of the witnesses at that hearing was the Crawford family physician, who had known Alexander since he was a child and had treated him for years and who knew his then condition and he recommended that the money be paid to him. No notice of the hearing was given to any parties and we do not determine the legal effect of the order entered, but we do hold that the circumstances disclose that the trustee was acting carefully and prudently. There are cases holding that a trustee who acts under advice of counsel will be treated with indulgence; *Ellig et al.* v. *Naglee and Sharp, Trustees* (1858), 9 Cal. 683; *Miller and Others* v. *Proctor and Anderson* (1870), 20 Ohio St. 442; and it can at least be said that a trustee who makes disbursement under the order of the court having jurisdiction to administer the estate, after a full and complete disclosure of the facts involved, is entitled to the same consideration.

From April 21, 1927, to September 28, 1927, Alexander's mother advanced him nearly $16,000, and after the $10,000 was advanced by the trustee in September and October, 1927, she advanced him in the remaining two months of the year about $3,000, and it is contended that the advancement of the $10,000 was unjustified, since the will authorized excursions into the *corpus* only when his income from the trust and from

other sources was inadequate. The trustee had no knowledge of these advancements by the mother and had no reason to believe that they were being made.

The will has reference to income made available to Alexander for his welfare and proper care. These advancements by the mother, technically to Alexander, were actually to Dorothy and Jarvis and what became of them we do not know. It seems probable that they disposed of this money as they saw fit, or kept it. Neither one testified and so the mystery of this money and in fact of much other money and of many other questions upon which some light might have been shed, remain unsolved. That checks representing these funds were made payable to Alexander does not change the situation, for while Dorothy and Jarvis were advising the home folks and the trustee that Alexander was receiving tender care and attention, he was in fact living in a state of complete subservience under the repeated threat and constant dread of being placed in an institution if he showed any interest in or curiosity concerning money matters.

The appellant complains that the trustee improperly expended portions of the *corpus* of the trust for the benefit of Alexander's wife and children, and that this contravened the terms of the will, since such expenditures are limited to those for the personal needs of Alexander alone while stricken. We do not agree with this contention. The needs of a married man include not only needs personal to him, but also the needs of his family living with him and entitled to his support. It would not be consistent with his welfare for his family to be in want and it is hardly probable that the testarix intended to provide for his needs and let his wife and children go without. *Eaton* v. *Eaton* (1924), 81 N. H. 275, 125 A. 433,

35 A. L. R. 1034; *Eaton* v. *Eaton* (1926), 82 N. H. 216, 132 A. 10; *Gardner* v. *O'Loughlin* (1912), 76 N. H. 481, 84 A. 935. In providing for the needs of the beneficiary it is entirely proper that consideration be given to the size of the fund and the station in life of the beneficiary.

The appellant asserts that the trustee abused its discretion in retaining its own stock as a part of the *corpus* and by participating in the merger of the two banking institutions whereby the trustee received its own stock as a part of the original *corpus.*

The will provides that the trustee or its successor "may continue any investment which may be delivered and turned over to it or them by said executor as hereinafter provided for to such time as they may deem it advisable, and whenever in its or their judgment a change of investment shall be made said trustees or either of them or its or their successor in said trust is and are directed to make such change of investment."

In 1 Restatement of the Law of Trusts, 664, § 230, it is said: *"Except as otherwise provided by the terms of the trust,* the trustee is under a duty to the beneficiary within a reasonable time after the creation of the trust to dispose of any part of the trust property included in the trust at the time of its creation which would not be a proper investment for the trustee to make." (Our italics.)

We are of the opinion that it would not be proper for a corporate trustee to acquire its own shares of stock as an investment without express authorization by the terms of the instrument bringing the trust into existence, or by provision of law, *In re Trusteeship of Stone* (1941), 138 Ohio St. 293, 34 N. E. (2d) 755, 134 A. L. R. 1306, but we construe the provision of the will above quoted as granting express

authority to the trustee to retain the bank stock and so long as they retained it, they were at liberty to participate in a reorganization or merger with another bank.

It is contended that the findings show that the trustee *invested* $30,000 of the *corpus* of the trust in California real estate having no authority so to do, and in this figure is included the $10,000 originally advanced, the sum of $13,344.29 expended to clear liens and acquire and preserve the real estate and the sum of $6,655.71 which was credited to Alexander against prior "overdrafts," this latter being upon the theory that the property, when taken over by the trustee, was well worth the sum of $30,000, which was the appraised and estimated minimum value thereof. By the terms of the will the trustee was authorized to invest in "such good and productive bonds, loans secured by first mortgage upon productive real estate, or such other first-class securities as will produce a sure and regular income," and it is apparent that under this provision the trustee would have no right to take the California real estate into the *corpus* of the trust as an investment.

But we do not regard the findings as being to the effect that the trustee acquired the California real estate as an investment. We regard them as being to the effect that the trustee, after making the original advancement of $10,000 which we have held was permissible, later tried to save to the beneficiary his investment in the property and incidentally to secure the return to the *corpus* of the original advancement. For justification of its actions in furnishing from the *corpus* funds with which to discharge the liens and save the property, the trustee must rely upon the provision of the will giving him discretion to protect

the welfare of the beneficiary in case of misfortune. We are of the opinion that an emergency as contemplated by the will existed at the time that the trustee undertook to save for its beneficiary his investment in the California real estate. His situation had gone from bad to worse. The hoped for improvement in his health had not been realized and he was now in the quicksand of further financial loss and greater economic insecurity. He had no other home or business. He must be provided for there or elsewhere. The trustee was called upon to make a decision and it did so. The question as to whether it exercised due care and sound discretion in that regard will be determined in the light of circumstances existing at the time the action was taken, and not in the light of subsequent events which could not be reasonably anticipated. *Sellers, Administrator* v. *Milford, Trustee* (1936), 101 Ind. App. 590, 198 N. E. 456. For a trustee's actions to be judged in the light of hindsight would discourage prudent men from undertaking any trust. The step was taken after the trustee's attorney, who was also a member of its board of directors, accompanied by the circuit judge, went to California for the purpose and made a complete investigation of the situation. It was in March of 1930, when we now know that the forces of a worldwide depression were gathering. Prudent men could not foresee the future and at that time none anticipated a rapidly falling market in real estate. Trustees do not have the power of clairvoyance. The relationship involves the exercise of the utmost good faith on the part of the trustee for the benefit and furtherance of the interest of the beneficiaries under the trust, *Terre Haute Trust Company et al.* v. *Scott, Receiver* (1932), 94 Ind. App. 461, 181 N. E. 369, and a trustee in a case like

the present must exercise in its management of the trust the care, skill, prudence and diligence of an ordinarily prudent man engaged in similar business affairs. Bogart on Trust & Trustees, Vol. III, § 541. We cannot say that under the circumstances shown here the trustee in any way failed in the duty owing by it.

That the trustee took title to the property in the name of a California trust company under a declaration of trust wherein the Elston Bank & Trust Company in its corporate capacity and not as trustee was designated as the trustor because under California law it could not take title as trustee directly, resulted in no loss to the estate and no harm or damage to the appellants and affords them no cause for complaint. Nor is it of controlling importance that the trustee in its reports and some correspondence referred to this expenditure as an "investment" in property. It in fact used a part of the *corpus* under the emergency clause in the will and the transaction speaks for itself.

Certain items finding their way into the hands of the trustees were treated as income rather than as a part of the *corpus*. To determine whether this was proper we must look to the instrument itself. Powell et al. v. *Madison Safe Deposit and Trust Company et al.* (1935), 208 Ind. 432, 196 N. E. 324, 101 A. L. R. 1368. We find that some of the items in question were specifically directed to become a part of the principal of the fund. Other items consisted of liquidating dividends and securities sold by the trustee for an amount greater than the appraised or estimated value thereof when taken into the fund. We find nothing in the instrument itself which would justify the trustee in treating any of these items as income. Unless otherwise expressed in or implied from the instrument

itself, appreciations or losses in the value of the fund belong to the principal.

When securities are sold for an amount greater than the appraised or estimated value at the time of taking thereof the entire proceeds belong to the principal of the fund. *Powell et al.* v. *Madison Safe Deposit and Trust Company et al., supra; Estate of Gartenlaub* (1926), 198 Cal. 204, 244 P. 348, 48 A. L. R. 677; *McKeown's Estate* (1919), 263 Pa. 78, 106 A. 189. It therefore appears that these items were improperly treated as income items. Since the court found that the trustee had properly accounted for all funds received and approved all expenditures made, whether from income or *corpus,* and since income alone was insufficient, and in view of our holding that the trustee was justified in looking to the principal for the care, attendance and support of the life beneficiaries, no harm can come from its previous action in that regard. However, such items should not hereafter be reflected upon the trustee's books or treated by it as income items.

It is said that the trustee wrongfully permitted the beneficiary to receive "over-drafts" in direct violation of the terms of the instrument which provides "the said income and support shall not be anticipated, sold, transferred, or assigned by him (or her) in whole or in part, my object being to secure to my said nephew during his natural life the use and enjoyment of all of said income of said property and fund for his support, maintenance and enjoyment beyond the control of any person or creditor or the judgment order or process of any court."

The anticipation of income complained of was largely a bookkeeping transaction and what appears to be a

substantial advancement to Alexander is actually a book charge of interest against his portion of the fund in connection with the taking over of the California real estate, although payments of taxes, assessments, etc., against the property were actually made and to that extent constituted advancements. In any event the quoted provision of the will is not intended to prevent the trustee from making advancements to the beneficiaries in anticipation of income but on the contrary is intended to prevent the beneficiary from himself transferring, selling, assigning or disposing of his income and support before he himself receives it.

It is not uncommon for a trustee to make advancements in the nature of a loan pending the receipt of actual cash income and such advancements are frequently justified by circumstances.

The court allowed attorney fees to Alexander's attorney in the sum of $500 payable from the *corpus* and allowed none to appellants' attorneys. Both actions are claimed to be erroneous. The appellants assert that their attorneys saved $1,500 to the *corpus* by changing the venue from a judge who would have allowed the expenditure of that amount for the purpose of the candy making venture to a judge who refused to do so. Of this novel assertion we need only say that we do not find that the record bears it out.

The court in the exercise of its discretion determined that representation for Alexander was required for his protection and that he was without funds to pay for it. There is some confusion in the record as to the stipulated value of the services, but the allowance made was well within the realm of reason and we cannot say that the court abused its discretion in making either the appointment or the allowance.

In this case it was stipulated that the trustee has a

valid and proper receipt for every item of money received and disbursed by it from the inception of the trust to the time of the trial. No charge of dishonesty is leveled at it and no intimation that it in any way acted to its own advantage. The court found that the trustee had at all times acted in good faith and in the exercise of its prudent judgment in the management of the trust and this is amply supported by the evidence. The most difficult situations confronting it have resulted largely from deception or secretiveness by those, not parties to this record, whose full cooperation the trustee had a right to expect. Such handicaps cannot be translated into delinquencies on the part of the trustee.

Other alleged errors do not in our opinion affect the substantial merits of the case. The judgment of the trial court should be and it is affirmed.

NOTE.—Reported in 48 N. E. (2d) 181.

### ON PETITION FOR REHEARING.

DRAPER, J.—In their petition for rehearing the appellants insist that there is no evidence that Lydia's income was ever other than it was at the time of the writing of the will in question. The evidence does show however that the funds available to her have not been sufficient to maintain her and, as we have said, we consider this to be such an emergency as is contemplated by the will in question.

The appellants further complain that we do not pass upon the question as to whether the sum of $987.63 received by the trustee from the estate of Clara R. Crawford over and above the original inventory of $150,319 belongs to principal or income. This was one of the items specifically directed to become a part of the principal of the fund and is dealt with as such in our original opinion.

The evidence shows that over a period of years the trustee has accumulated on two farms constituting a part of the *corpus* and operated by the trustee, certain livestock, grain, feed, farm machinery, seed and other personal property of the value of $5,300 and the appellant insists that these assets were "tied up" contrary to the express terms of the will and "at a time when the trustee was delving into the corpus for the life beneficiaries." They thus reason that "at the time 'overdrafts' were permitted there was undistributed income in the trust."

These farms were a part of the original *corpus* of the trust and the trustee was expressly authorized to retain these assets if it deemed it advisable so to do and to hold, manage or rent the same. It elected to hold and manage the properties and there is no claim that in so doing it was guilty of bad faith or an abuse or unreasonable exercise of its discretion. It is difficult to understand how the trustee could properly hold and manage these farms without the use of the items mentioned, and it had an implied power to acquire and use them for that purpose. Bogert on Trusts & Trustees, Vol. 3, § 551. It is not claimed that the trustee acquired more of such items than was necessary for the proper management of the farms nor that it kept any of them after they should have been disposed of and it seems apparent to us that it would not be proper management to dispose of these items every time the trustee was confronted with the necessity of finding income for distribution.

It is insisted that this court erred in holding that an allowance of attorney's fees to Alexander's attorney can be made from the *corpus* and that in so doing we ignore *Garvin, Receiver* v. *Rappaport* (1940), 216 Ind. 471, 25 N. E. (2d) 249, and *City Na-*

*tional Bank & Trust Co. of South Bend, Trustee* v. *American National Bank at Indianapolis, Trustee, et al.* (1940), 217 Ind. 305, 27 N. E. (2d) 764. We have again examined the record and are convinced that the appellants have raised no question with reference to the appointment and payment of this attorney except perhaps as to the amount to be paid to him. The record shows that Alexander filed his written petition asking that he be permitted to employ the attorney to represent him in this proceeding, or that the court appoint the attorney for that purpose and that the court make such allowance to the attorney as to the court might seem proper. The appellants Anna Clara Robison and John McKittrick Crawford filed their written objections to the granting of this petition, which said objections the record shows "read as follows, to-wit: (said objections missing from the file)." We therefore do not know and have no way of knowing what objections were made to the granting of the petition in the court below. In this state of the record no question concerning the ruling is presented for our consideration. *George B. Limbert and Company* v. *Waznitsky* (1921), 191 Ind. 419, 133 N. E. 128; *Everitt, Seedsman* v. *Indiana Paper Company* (1900), 25 Ind. App. 287, 57 N. E. 281.

In so far as the amount of the allowance is concerned the order book entry shows that it was stipulated that the services of this attorney were of the reasonable value of $50 per day, while the bill of exceptions shows the total value of such services to be stipulated at the sum of $50 and the appellants cite the cases of *Alley* v. *The State, ex rel. Blenzinger* (1881), 76 Ind. 94, and *Blair* v. *Curry, et al.* (1898), 150 Ind. 99, 46 N. E. 672, 49 N. E. 908, to the proposition that in such a situation the recitals of the bill of exceptions must be accepted

as authentic. However, it is admitted in the briefs of the parties and was admitted by them in argument that the recital as contained in the bill of exceptions is incorrect and erroneous. The trial court was in a position to know the value of the services rendered and to be rendered by this attorney and we are not disposed to interfere with the allowance made.

We have again reviewed the evidence carefully and it is our opinion that all of the findings of the court are fairly sustained by the evidence, are within the issues and are not so equivocal that they must be disregarded.

The petition for rehearing is denied.

NOTE.—Reported in 48 N. E. (2d) 181.