**In the Matter of the Della Lustgarten NATHAN TRUST.**

No. 23A01–9306–CV–182.

Court of Appeals of Indiana, First District.

Aug. 11, 1993.

Rehearing Denied Oct. 8, 1993.

---

George L. Hanna, Hanna, Gerde & Burns, Lafayette, for appellant.

Robert O. Williams, Williams Law Offices, Covington, for appellee.

ROBERTSON, Judge.

This appeal raises the question of whether, when a trust, the purpose of which is to provide for the support and maintenance of a particular settlor, has terminated upon the death of the settlor, the trustees have the power to sell land which is the corpus of the trust in order to pay expenses and costs incurred in the administration of the trust before they make a final distribution of the corpus to the remaindermen. The trial court examined the trust document, concluded that the trustees did not possess the power to sell the realty after the settlor's death and denied the trustees' permission to sell. We reverse.

Louis Nathan died on October 9, 1973, leaving a will and codicil, which, for various reasons, could not be carried out in the manner Nathan had intended. Nathan's legatees reached a compromise and entered into a family settlement agreement by which Nathan's children agreed to place in trust the undivided one-half interest in a 509.26 acre farm they were to receive by virtue of Nathan's will and codicil with the income and principal to be made available for the benefit and use of their mother, Della Nathan. The agreement provided that the trustees would be instructed that upon the demise of Della Nathan, any and all remaining corpus of the trust should be divided equally among the five children. In consideration for this agreement, Della Nathan irrevocably placed her undivided one-half interest in the farm in the trust. On September 23, 1977, Della Nathan and each of her children executed the trust agreement which is the subject of this litigation.

Della Nathan died on January 4, 1992. At that time, the farm had been leased for a one-year term ending in December, 1992. The co-trustees continued to manage the farm and had it appraised, hoping to obtain agreement among the five children concerning its disposition. At some point, it became apparent to the co-trustees that expenses of administration and advances made by one of the trustees to the trust estate could not be fully paid from income accumulated in the trust account and the farm would need to be sold. The co-trustees had the trust docketed to authorize the payment of various expenses and the sale

of the farm. Unhappy with the appraisals obtained for the farm, four of Della Nathan's children filed a petition to terminate the trust in an effort to obtain the farm in fee.

The merits of the controversy involve an interpretation of the trust instrument. Whether the co-trustees have the authority to sell the farm after Della Nathan's death must be determined from the intention of the settlors of the trust as expressed or implied in the trust instrument. *Powell v. Madison Safe Deposit & Trust Co.* (1935), 208 Ind. 432, 438, 196 N.E. 324. The intention and purpose of the testator or settlor in creating the trust is controlling. *Id.* at 448, 196 N.E. 324.

The trust agreement directs the co-trustees to pay income from the trust to Della Nathan during her lifetime. "If the income payments from the trust shall be insufficient in the discretion of the co-trustees to provide for the reasonable support, care and comfort of any beneficiary," the co-trustees may pay to "such beneficiary" or apply for her benefit so much of the principal as the co-trustees deem proper or necessary for that purpose. Upon the death of Della Nathan, the trust "shall be terminated and the corpus of the trust estate and any accumulated income shall be distributed equally, share and share alike" to the Nathans' five children or their heirs per stirpes.

The trust agreement also gives the co-trustees "with respect to any property at any time constituting any part of the trust estate" the "full power and authority" to alter and change the investments of the trust estate, the power to sell, give options to purchase, assign, lease, mortgage, and transfer any of the property and assets of the trust estate, the power to pay the charges and expenses of the trust estate, and the power "to perform any and all other acts which they may deem necessary or proper for the carrying out of the purposes of this trust agreement." The co-trustees are entitled to reasonable compensation for their services in the administration of the trust. "Such compensation shall be as agreed by the Co-Trustees or

by a court of competent jurisdiction, at the expense of the trust."

We are convinced by the language of the trust document that the primary and controlling purpose of the settlors was not to reserve in Della Nathan a life estate in the land or to give her children an interest or estate in the land itself but to provide a means by which the land and the income from it could be used for her reasonable support and maintenance, leaving to her children whatever remained of the land or its proceeds. The trust fully empowers the co-trustees with the discretion to incur whatever expense is necessary for the reasonable support, care and comfort of Della Nathan and to charge those expenses, if income from the corpus is insufficient in the discretion of the co-trustees, against the corpus of the trust estate itself, that is, the land. Absolute title to the entire farm was placed in the hands of the co-trustees to sell for the purpose of defraying the expenses of Della Nathan which, under the express terms of the trust, include a reasonable compensation for the co-trustees' services "at the expense of the trust."

■ When the power invested in the co-trustees to sell the real estate for the purpose of the trust is coupled with absolute title to the premises, the power created is not destroyed by the death of the settlor. *McNew v. Vert* (1908), 43 Ind.App. 83, 87, 86 N.E. 969. Hence, it matters not whether the power to sell is exercised before the expense is incurred or after, *id.*, or that expenses remain to be paid after the settlor's death.

■ The record reflects that, in addition to administrative expenses, one of the co-trustees may have advanced his own funds in furtherance of the purpose of the trust. Where a trustee uses his own money for purposes of the trust, he is entitled to reimbursement. *American Bonding Co. v. State ex rel. Whisler* (1907), 40 Ind. App. 559, 567, 82 N.E. 548. *See also* Ind. Code 30-4-3-3(a)(10). Likewise, a trustee has an equitable right to be reimbursed for all reasonable expenses properly incurred in the execution of his trust. *Matter of the*

*Trust of Loeb* (1986), Ind.App., 492 N.E.2d 40, 43, *trans. denied.* He will not be compelled to part with the trust property until the disbursements are paid. *Curran v. Abbott* (1895), 141 Ind. 492, 497, 40 N.E. 1091.

 Indiana Code 30–4–5–11 instructs the co-trustees on how to charge expenses against income and principal. The remaindermen have not questioned whether the co-trustees have properly charged funds received and expenditures made against income and principal. Hence, this court has before it only the question of whether the trust authorizes the co-trustees to sell the property if necessary to pay for expenses incurred for the benefit of the income beneficiary. We have concluded that the trust document gives the co-trustees the discretion to make this decision. The trust relationship involves the exercise of the utmost good faith on the part of the trustees for the benefit and furtherance of the interest of the beneficiaries under the trust; a trustee must exercise in its management of the trust the care, skill, prudence and diligence of an ordinarily prudent person engaged in similar business affairs. *Robison v. Elston Bank & Trust Co.* (1943) 113 Ind.App. 633, 658, 48 N.E.2d 181. In the absence of bad faith, or an abuse or unreasonable exercise of discretion by the co-trustees, the courts will not interfere with a decision to use a portion of the corpus for the purpose intended by the settlor. *Id.*

The sole basis for the trial court's decision not to authorize the sale appears to be its determination that the co-trustees did not possess the power to sell the land for the trust purposes after the death of Della Nathan. Indiana law provides otherwise. Accordingly, we reverse the judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

NAJAM and MILLER, JJ., concur.