Louise Noel MALACHOWSKI, Nancy Noel Kosene, H. Jerome Noel, Jr., Irma Noel Rand, William H. Noel, Carol Noel Fleming, William H. Failey, Jr., and John Noel Failey, Appellants (Plaintiffs Below),

v.

BANK ONE, INDIANAPOLIS, N.A., Formerly American Fletcher National Bank and Trust Company, Appellee (Defendant Below).

No. 49A04–9407–CV–260.

Court of Appeals of Indiana.

June 27, 1996.

---

Henry J. Price, Jennifer L. Graham, Jerry Garau, Price & Barker, Indianapolis, for Appellants.

Michael Rosiello, Stanley C. Fickle, Lynn C. Tyler, Barnes & Thornburg, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Louise Noel Malachowski, Nancy Noel Kosene, H. Jerome Noel, Jr., Irma Noel Rand, Carol Noel Fleming, William H. Failey, Jr. and John Noel Failey (the Beneficiaries) appeal from the trial court's judgment in their breach of trust and fraud action against Bank One, Indianapolis, N.A. We affirm.

### ISSUES [1]

1. Whether reversal is required because the trial court's findings are in irreconcilable conflict.

2. Whether the trial court's conclusion that Bank One's diversification action was proper is erroneous when the court also found that Bank One misrepresented the existence of a mandate to diversify.

3. Whether the trial court's analysis of the prudence of the diversification action was proper.

4. Whether the trial court erred by finding Bank One did not act improperly in failing to obtain court approval for diversification.

5. Whether the trial court erred in failing to find for the Beneficiaries on their fraud claim.

6. Whether the trial court erred in failing to award punitive damages to the Beneficiaries.

7. Whether the trial court erred in failing to award attorney fees to the Beneficiaries.

### FACTS

In 1935, Harry S. Noel, as settlor, established an irrevocable inter vivos trust ("the Trust") and named Bank One's predecessor as trustee. Our supreme court has already noted the following details about the parties and this particular trust in the initial action:

Income from the Trust was to be paid to the settlor's wife during her lifetime. Upon her death, income was to be paid in equal shares to the settlor's three children, Harry J. Noel, Barbara L. (Noel) Seawell, and Carol A. (Noel) Failey, or to their surviving issue. The Trust is to terminate on the death of the survivor of these three children with the corpus to be distributed to the surviving issue of those children. Two of the settlor's children have died. Harry J. Noel died in 1986, leaving six children, H. Jerome Noel, Jr., Nancy (Noel) Kosene, William H. Noel, Carol (Noel) Madrick, Louise (Noel) Malachowski, and Irma (Noel) Rand, all of whom are plaintiffs in this action. Carol A. (Noel) Failey died in 1961, leaving two children,

---

**1.** Bank One raised four issues as cross errors. However, Bank One did so as an "alternative" to our affirming the trial court, in which case they sought "no further relief." Bank One's Brief at 61. Therefore, because we affirm the judgment of the trial court, we do not reach these issues.

John Noel Failey and William H. Failey, Jr., both of whom are plaintiffs here. Barbara L. (Noel) Seawell is still living, and has two children. Neither Mrs. Seawell nor her children are parties to this action.

When the Trust was created, its only asset was life insurance policies payable on the death of the settlor. The Trustee was authorized to purchase property from the settlor's estate and was totally indemnified from any liability for those transactions. The settlor also had established a testamentary trust in his Will and named Bank One as trustee. At the settlor's death, the testamentary trust was funded with Lilly stock.

The settlor died in 1943. Proceeds from the life insurance policies held by the Trust were lent to the estate. That loan was repaid in 1947 with 1,564 shares of Lilly stock valued at $35,000. From that time until 1972, the corpus of the Trust consisted entirely of Lilly stock. In 1972, Bank One began selling Lilly stock to diversify the Trust holdings apparently over the objections of some of the settlor's children. At the time diversification began, the value of the Lilly stock and Trust corpus held by the Trust was $2,400,000. Sales of the stock continued intermittently for eight years until December 1985. The Beneficiaries assert that the value of the corpus in 1985, if no Lilly stock had been sold, would have been approximately $360,000 greater.

In February 1988, this action was filed against Bank One. The Beneficiaries sought various forms of relief, including the restoration of Lilly stock sold by Bank One to the Trust, removal of Bank One as Trustee, and division of the Trust corpus into three shares. Bank One moved for summary judgment. The trial court found that the sale of Lilly stock and Bank One's refusal to divide the Trust into separate portions did not violate the terms of the Trust or constitute any breach of trust. The trial court did not decide whether the Beneficiaries' claim was barred by the statute of limitations.

The Beneficiaries appealed. The Court of Appeals held that the action was barred by the statute of limitations and did not address the substance of the claims presented to the trial court.

*Malachowski v. Bank One*, 590 N.E.2d 559, 561–62 (Ind.1992). Our supreme court granted transfer, vacated the opinion of the Court of Appeals, and reversed the trial court's entry of summary judgment, holding that questions of fact existed with respect to whether 1) "the Beneficiaries' claim is barred by the statute of limitations;" 2) "the trustee committed a breach of trust;" and 3) "Bank One should be removed as Trustee." *Id.* at 561.

Specifically, the supreme court considered the Beneficiaries' presentation of "several circumstances that raise questions concerning the propriety of diversification" on the "Beneficiaries' claim for breach of trust[,] . . . premised on the argument that Bank One wrongfully sold the Lilly stock," and found the Beneficiaries to have established "genuine issues of material fact precluding summary judgment for Bank One." *Id.* at 564, 565. These questions about the propriety of diversification concerned 1) claims of self-serving motives on the part of Bank One for selling the Lilly stock; 2) an indemnity agreement written by Bank One which Bank One insisted all Beneficiaries sign before Bank One would consider not undertaking diversification; 3) the sizeable capital gains taxes levied on the Trust corpus; and 4) the Beneficiaries' assertion that Bank One misrepresented the existence of a mandate from the national Bank Board Audit staff requiring diversification.

On the matter of whether Bank One should be removed as Trustee, "at least in part on account of the alleged misrepresentation of the mandate from the National Bank Examiners Audit staff to diversify the Trust holdings," *id.* at 566, the supreme court agreed with the court of appeals' dissenting statement that a trier of fact may be "permitted to determine from the evidence that in making misrepresentations to the Beneficiaries as to federal examiners' orders to diversify, the Bank had so jeopardized its trust relationship as to require removal." *Id.* at 567.

Before further action after the remand, the Beneficiaries filed in the trial court an additional complaint against Bank One for fraud, alleging that a letter from a Bank One trust officer "misrepresented the existence of a mandate from the National Bank Examiners requiring" either diversification of the 100% Lilly stock corpus or indemnification of the bank by all beneficiaries. (R. 156). The letter stated that Bank One had "been mandated by the National Bank Examiners audit staff and by our own Internal Trust Committee to either diversify this concentration of Lilly stock or seek indemnity from all interested parties against any loss due to its retention." (R. 1986).

Both the breach of trust action and the fraud action were tried to the court over six days in July 1993. On January 13, 1994, the trial court issued its thirty-eight page findings of fact, conclusions of law and judgment. The court found that the diversification action undertaken by Bank One did not constitute a breach of trust. However, the court also held that the "misrepresentations to the beneficiaries as to Federal Bank Examiners' order to diversify" had "so jeopardized its trust relationship as to require removal." (R. 1167). The judgment denied the Beneficiaries' claims for damages and attorney fees.[2]

*DECISION*

The trial court entered special findings of fact and conclusions of law as provided by Ind. Trial Rule 52(A), pursuant to the request of the beneficiaries. As recently summarized by our supreme court, appellate review of a judgment upon special findings of fact by the trial court proceeds as follows:

First, it must determine whether the evidence supports the trial court's findings of fact; second it must determine whether those findings of fact support the trial court's conclusions of law. An appellate court "shall not set aside the findings or judgment unless clearly erroneous," Ind. Trial Rule 52(A); and it shall not reweigh the evidence or determine the credibility of witnesses. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings.

*Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind.1994) (citations omitted).

As already noted, the court's findings of fact, conclusions of law and judgment consume thirty-eight pages. The court's initial fourteen findings detail the trust and its beneficiaries. The next thirty-two findings of fact are labeled "findings of fact as to prudence of diversification." Then the court wrote six "findings of fact as to trustee fees." The concluding twenty-two findings of fact are designated "as to misrepresentations." Upon these findings, the court made thirty-four conclusions of law.

1. *Findings Conflict*

■ The Beneficiaries first claim reversal is required because the trial court's findings are in irreconcilable conflict. The Beneficiaries direct us to Conclusion of Law 12, stating,

By virtue of the fiduciary relationship between the parties, Bank One owed Plaintiffs and H. Jerome Noel, Sr. a fiduciary duty to act with utmost loyalty, honesty, and in good faith. Bank One has breached this duty.

---

**2.** One issue the supreme court also considered was the Beneficiaries' claim that Bank One breached its fiduciary duty by failing to follow the express intent of the settlor that the Trust retain Lilly stock. Based upon the law of construing trust documents, the court concluded that "the settlor's intent was clearly expressed in the Trust instrument which contained no restrictions, other than those imposed by law, on the Trustee's selling Lilly stock held by the Trust." *Malachowski* at 566. The court further concluded that the "clear terms of the Trust gave Bank One power to 'invest and reinvest' the assets of the Trust" and found "no provision in the Trust requiring the Trustee to retain any particular assets." *Id.*

Given the supreme court's analysis of the Trust document, therefore, we did not recount the facts emphasized by the dissent regarding the Noel's family relationship with Lilly because we found them to be irrelevant to our consideration of the legal issues here.

They claim this to be in irreconcilable conflict with Conclusion of Law 23, stating,

> The Plaintiffs' contention that Bank One breached the duty of loyalty to the beneficiaries is rebutted by the evidence. Bank One made the diversification decision based on the interests of the beneficiaries and not on its own interests. Bank One did not diversify in order to increase its fees or to obtain additional investment in Fund B. Bank One acted in accordance with its proper role as a Trustee. Bank One did not breach the duty of loyalty to the Plaintiffs or other Trust beneficiaries.

■ First, we disagree with the Beneficiaries' contention of irreconcilable conflict, because the extensive conclusions of law must be read in pari materia and as they are developed by the trial court. *See, Kelley, Glover & Vale v. Heitman,* 220 Ind. 625, 44 N.E.2d 981 (1942), *cert. denied* 319 U.S. 762, 63 S.Ct. 1320, 87 L.Ed. 1713 (Findings must be considered "in connection with" one another to determine whether "as a whole" they support a conclusion of law.). The trial court began its conclusions of law by citing the following statutory duties imposed upon a trustee by the Indiana Trust Code:

> (a) The trustee has a duty to administer a trust according to its terms.
>
> (b) Unless the terms of the trust provide otherwise, the trustee also has a duty:
>
>> (1) To administer the trust solely in the interest of the beneficiaries;
>>
>> (2) To treat multiple beneficiaries impartially;
>>
>> * * * * * *
>>
>> (4) To preserve the trust property;
>>
>> (5) To make the trust property productive;
>>
>> * * * * * *
>
> (8) Upon reasonable request, to give the beneficiary complete and accurate information concerning any matter related to the administration of the trust and permit the beneficiary or his agent to inspect the trust property, the trustee's accounts, and any other documents concerning the administration of the trust;

(R. 1162–63, citing Ind.Code 30–4–3–6). The court then discussed the Bank One communication on diversification, and its effect—the delay in the Beneficiaries' bringing an action to prevent diversification. After the general statement about the duty imposed by a fiduciary relationship and that "this duty" was breached, the court proceeds to make the series of conclusions of law that flow from its extensive findings of fact. The conclusion which imposes a consequence (# 21), and therefore must result from the earlier conclusion of some kind of a breach, is that the misrepresentation served to so jeopardize the trust relationship as to require removal. Thereafter, the evidence, as found, is considered to reach the conclusion (# 22) that Bank One acted prudently in exercising the investment discretion given it by the settlor when it diversified the Trust. At this point, in the next conclusion (# 23), the court finds the contention of a breach of loyalty rebutted and explains why. The court concluded that Bank One made its decision to diversify based upon the interests of the Beneficiaries and not in order to increase its fees or in its own interests. As its wording makes clear, the conclusion is that Bank One did not breach its duty of loyalty in diversifying the Trust corpus.

Next, the precedent cited for reversal upon irreconcilable conflicts in the trial court's findings is *Paul v. Kuntz,* 524 N.E.2d 1326 (Ind.Ct.App.1988). We find *Paul* inapposite to the present case. In *Paul,* where two boys who had spent the evening drinking suffered injuries after the car they occupied struck a tree, the court considered a claim and counterclaim making the same contentions of fault and nonfault (specifically, each asserted he was the passenger and the other the driver). The court on A's claim found B 54% at fault, and on B's claim found A 54% at fault. We said that the two findings were inadequate to support the judgment against A on A's complaint and against B on his counterclaim. Thus, it was the factual findings which failed to support the judgment. The Beneficiaries do not contend that the court's multitudinous findings of fact, which detail its consideration of Bank One's "prudence" in undertaking the diversification, are inadequate to support the conclusion that the

diversification did not constitute a breach of loyalty; nor do we find such to be the case.

## 2. *Misrepresentation and Prudence*

 The Beneficiaries claim that because the court found that Bank One misrepresented the existence of a mandate to diversify, the conclusion that the bank complied with the prudent investor rule is clearly erroneous.[3] They refer us to *Robison v. Elston Bank & Trust Co.*, 113 Ind.App. 633, 48 N.E.2d 181, 187 (1943), *reh'g denied*, and suggest that the trial court "misstated" the holding of that case. Beneficiaries' Brief at 14.

> Conclusion of Law 27 states,
>
> The Court must uphold Bank One's diversification decision unless it constituted an abuse of discretion. *Robison v. Elston Bank & Trust Co.* (1943), Ind.App., 113 Ind.App. 633, 48 N.E.2d 181, 187 (in banc), *reh'g denied* (1943), 113 Ind.App. 633, 49 N.E.2d 348; *Husted v. Sweeney* (1943), Ind.App., 113 Ind.App. 418, 48 N.E.2d 1004, 1008; Restatement (Second) of Trusts 187 (1959): 10 Bogert, *Trusts and Trustees* 560 at 201–04 (1988).

(R. 1170). We note that *Robison* was only one of several authorities cited by the trial court for this proposition. Nevertheless, we refer to the source, which we find says,

> In this case the trustee determined that it was necessary and proper to use a portion of the principal for the purpose mentioned and unless it has been guilty of bad faith or has in some manner abused or unreasonably exercised its discretion the court will not interfere; *Bogert Trusts and Trustees*, vol 3, § 500; *In re Hilton*, 174 App. Div. 193, 160 N.Y.S. 55; *Martin v. McCune*, 1925, 318 Ill. 585, 149 N.E. 489; *Kimball v. Blanchard*, 1906, 101 Me. 383, 64 A. 645; for where a trustee has been vested with discretion he will not be disturbed in a reasonable exercise thereof, but where there is a failure to exercise such discretion in a reasonable manner the courts will intervene. *Thompson v. Denny et al.*, 1922, 78 Ind.App. 257, 135 N.E. 260;

*Restatement of the Law*, Trusts Vol. I, § 187.

*Robison*, 48 N.E.2d at 187. The Beneficiaries would have us read the phrase "unless [the trustee] has been guilty of bad faith" as excepting the consideration of the propriety of Bank One's diversification action from application of the abuse of discretion standard and, according to their reading of *Robison*, makes the conclusion that Bank One complied with its prudent investment duty clearly erroneous.

*Robison* does not appear to have expressly considered a claim of misrepresentation by the trustee. However, the action did challenge "the legality of certain acts of the trustee in the administration of the estate." *Id.* 48 N.E.2d at 183. In one section, we found certain proceeds from the sale of securities "were improperly treated as income items." *Id.* 48 N.E.2d at 191. Because all funds received were accounted for and no harm ensued, the improper treatment was found immaterial. Had the *Robison* standard been as proffered by the Beneficiaries, such improper distinctions between principal and income would have precluded our affirming the *Robison* trial court's judgment as we did, finding the trustee's actions were "well within the realm of reason." *Id.*

The judgment of the trial court here does not rely on a misunderstanding of *Robison.*

## 3. *Prudence Determination*

 The Beneficiaries claim the trial court erred by failing to determine whether it would have been prudent not to diversify the Trust. They refer us to our supreme court's statements on the previous appeal, as follows:

> Applying the prudent investor rule requires consideration of the particular factual circumstances in an individual case. As the *Restatement, Second, of Trusts* § 228 page 541 states: "Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a

---

**3.** The Beneficiaries make the same argument about the conclusion that Bank One complied with its duties of loyalty and honesty. However, this argument is not developed beyond its mere assertion. Accordingly, it is waived. Ind. Appellate Rule 8.3(A)(7).

reasonable diversification of investments *unless under the circumstances it is prudent not to do so."* (Emphasis supplied). *Malachowski,* 590 N.E.2d at 564. According to the Beneficiaries, the trial court was thereby directed "to determine whether, under the circumstances before it, it would have been prudent for the Bank *not* to diversify the Trust." Beneficiaries' Brief at 19.

The trial court concluded as follows:

> In diversifying the Trust, Bank One fully complied with its duty under the prudent man rule. Diversification was prudent both to avoid the risk of loss if the price of Lilly stock declined and to increase income. It was reasonable and prudent to incur capital gains taxes as part of the diversification. Bank One mitigated the tax effect by spreading the sales over time and, when possible, by recognizing losses in other Trust assets to offset the tax liability. The fact that Lilly had appreciated in the past did not make diversification imprudent. The past history of a stock does not foretell its future; and there is an excessive risk in holding a trust account 100% concentrated in the stock of any company. Bank One's position on diversification was reasonable, rational, and consistent with well-established principles of prudent trust investment. Bank One's decision to diversify was an honest and reasonable exercise of the investment discretion it was given in the Trust instrument. Bank One likewise complied with its duties under the prudent man rule in carrying out the diversification.

(R. 1167–68). This conclusion flowed from findings of fact that included Bank One's having twice been told by National Bank Examiners to diversify the trust holding (unless indemnifications were obtained); Comptroller of the Currency guidelines of a maximum 20% trust investment in a single asset; Bank One's counsel's opinion that diversification was required; the independent legal advice received by a beneficiary that diversification was appropriate; correspondence between beneficiaries indicating legal authority supported diversification; reasoning in support of the gradual stock sales arrangement; the plan to invest the proceeds in tax-exempt municipal bonds, paying interest at then record yields; how diversification substantially increased the income generated by the Trust and even more dramatically increased the Beneficiaries' after-tax income; how Lilly stock steeply declined in value in the 1970's, appreciating primarily in 1985 and thereafter; action in 1977, with consent of the income beneficiaries, to invest sales proceeds in a diversified fund of common stock; the hiatus in sales of Lilly stock between 1981 and 1984; notice to the Beneficiaries in 1984 that the principal value of the trust had fallen 3% because of its heavy concentration in Lilly stock; and that after resumed sales of Lilly stock, the value of the Trust's Lilly shares was 25% of the total value of the Trust in 1985.

We do not agree with the Beneficiaries' interpretation of what the trial court had been directed to do. Given the evidence before the trial court,[4] we believe the trial court's factual findings about the actual values of Lilly stock between 1972 and 1985 do consider the question of whether it would have been prudent for Bank One not to

---

**4.** P.G. Guthrie, *Trustee—Duty to Diversify Investment,* 76 A.L.R.3d 730, 735 (1969), discusses Comment C to § 228 of the Restatement of Trusts 2d describing the

> circumstances in which the trustee is excused from diversifying investments; thus, where the trust estate is very small, it may be proper for the trustee to invest the whole or substantially the whole of it in one security or type of security. If, for example, the trust estate amounts to one or two thousand dollars, it may be proper to invest the whole amount in a single mortgage. So also, in times of crisis and the general financial instability, it may be proper to invest a large portion or even the whole of the trust estate in a single type of security such as government securities. In any event, the trustee is not liable if under all the circumstances his conduct is that of a prudent man and he complies with the provisions of the terms of the trust and of any statute which may be applicable.

Such were the kinds of circumstances contemplated by the Restatement clause "unless under the circumstances it is prudent not to do so." This does not support the Beneficiaries' arguments about the trial court's failure to consider the lack of evidence as to Bank One's investigation of alternative investments.

diversify the Trust. The specific finding reads,

In the 1970's, as well [this follows a finding of how diversification increased Trust income], Lilly stock underwent a steep decline in value. Lilly's per-share price dropped 49.16% between 1972 and 1977. It rebounded slightly in the next few years, but in the ten years between 1972 and 1982, Lilly stock dropped 30.10%. Lilly has shown its volatility in later years as well. In 1981, Lilly's stock price dropped almost 20% in a six month period. Between 1990 and 1993, Lilly has lost over 40% of its value. On the other hand, the appreciation in Lilly stock, and increases in the Lilly dividend, took place largely in 1985 and thereafter. Bank One could hardly have foreseen those events in the early 1970's.

(R. 1151).

Further, as noted by our supreme court,

The clear terms of the Trust gave Bank One power to "invest and reinvest" the assets of that Trust. This language grants Bank One the power to purchase assets with the proceeds, dispose of the assets so purchased, and purchase additional ones, within its prescribed duties as Trustee. We find no provision in the Trust requiring the Trustee to retain any particular assets

. . .

*Malachowski,* 590 N.E.2d at 566. Yet, the breadth of the trustee's authority pursuant to the terms of the Trust still is subject to the "prudent investor" rule made applicable by statute and providing that

In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for any trust heretofore or hereafter created, the trustee thereof shall exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

*Id.* at 564, citing Ind.Code 30–4–3–3(c). The trial court's conclusion that "Bank One did not breach the duty of prudent investment"

includes reference to I.C. 30–4–3–3(c) and § 228 of the Restatement, as adopted in *Malachowski,* and continues as follows:

the diversification was prudent, and in the interest of all beneficiaries, because it reduced the risk of loss inherent in holding a $2 million trust totally concentrated in a single security. This risk justifies diversification even if the stock is considered a good investment in a diversified portfolio. The diversification was also reasonable and prudent to increase the low productivity of the Trust assets, which earned less than 1% before taxes, and to increase the income payable to the income beneficiaries. Bank One's diversification of the Trust was prudent and well within its discretion in exercising its investment authority.

(R. 1171–72, citations omitted).

The Beneficiaries contend certain evidence was "ignored by the trial court," Beneficiaries' Brief at 20, though "pertinent and material to the question of the prudence of diversification." *Id.* at 23. As noted at the outset, under T.R. 52(A) we do not set aside the findings or judgment unless clearly erroneous. The findings made by the trial court are supported by the evidence, and the findings support the conclusion that the trustee's decision to diversify was prudent.

### 4. Court Approval for Diversification

■ The Beneficiaries next claim the trial court erred by finding Bank One did not act improperly in failing to obtain court approval for the diversification.

The trial court found, as fact, that "Bank One had a right to seek the guidance of the Probate Court as to the prudence of diversification and the appropriateness of the indemnification plan, but it did not do so." (R. 1162). The court's conclusion thereon states,

Bank One did not act improperly in failing to obtain Probate Court approval for the diversification. Bank One had complete investment authority. However, such a proceeding would have been helpful because of circumstances which raised legitimate questions concerning the propriety of diversification, such as

a. The remarkable increase in the value of Lilly stock prior to diversification.

b. The significant capital gains taxes resulting from diversification;

c. The strong objections of most of the beneficiaries;

d. The fact that all but one of the income beneficiaries did not need or want increased income.

(R. 1170).

The Beneficiaries contend that, because the "legitimate questions" cited by the court "glaringly omit[ ] the fact that the Bank had misrepresented" to them the existence of a mandate to diversify, the court's conclusion that Bank One did not act properly "is rebutted by controlling United States Supreme Court precedent," namely *Mosser v. Darrow* (1951), 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927. Beneficiaries' Brief at 24.

We agree with Bank One that *Mosser* is inapposite to the facts in this case. As framed by Justice Jackson, the principal question of *Mosser* concerned the "personal liability of a [bankruptcy] reorganization trustee, who, although making no personal profit, permitted key employees to profit from trading in securities of the debtor's subsidiaries." 341 U.S. at 268, 71 S.Ct. at 681. The trial court had found the bankruptcy trustee liable for a breach of trust, based on improper transactions which were contrary to the interests of the trust, but the Court of Appeals reversed for fear of discouraging people from serving as trustees. The Supreme Court, in reversing the Court of Appeals, declared that "there are ways by which a trustee may effectively protect himself against personal liability" and cited the "well established" practice "by which trustees seek instructions from the court." *Id.* 341 U.S. at 274, 71 S.Ct. at 683.

The most critical fact in *Mosser* was that employees of the trustee had been permitted to make profits. Here, the trial court made a series of findings to the effect that there was no impropriety with respect to trustee fees. There is no conclusion that Bank One profited in any way. Thus, we have no *Mosser*-like improper transactions. As already noted by our supreme court, and quoted in the preceding section, the trust before us expressly granted Bank One the power to make trust investment decisions. These decisions have been reviewed, with factual findings leading to the conclusion the investment decision met the statutory standard of prudence and discretion. *Mosser* does not require Bank One to have sought court guidance on its diversification action.

### 5. *Fraud*

The Beneficiaries' fifth claim is that the trial court erred by failing to find for them on their fraud claim "despite finding all of the elements necessary to support the claim." Beneficiaries' Brief at 27.

The elements of fraud which a plaintiff must prove are: (1) a material misrepresentation of past or existing-fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of.

*Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind.1992)(citing *Automobile Underwriters, Inc. v. Rich*, 222 Ind. 384, 390, 53 N.E.2d 775, 777 (1944)).

The court found "Bank One's witnesses acknowledged that no formal or written mandate or order from the National Bank Examiners was received," despite the statement in the letter asserting a mandate. (R. 1158). The court further found the "spokesman" beneficiary believed the Federal Government mandate meant "there was nothing he could do to stop the diversification." (R. 1160). The court further found Bank One "failed to inform Plaintiffs of the complete facts," and that "Plaintiffs would have brought an action to prevent the diversification, if they had known no government mandate to diversify the Trust existed." (R. 1161). The court's conclusion was that "[b]ut for Bank One's representation that it had been mandated by the national Bank Examiners to diversify the Trust, the beneficiaries would have brought a legal action to prevent the diversification before it occurred." (R. 1165). However, the court concluded that the only consequence

flowing from the Beneficiaries' lack of awareness that a "mandate" did not exist was "the great delay in the filing of these actions."[5] (R. 1165).

The Beneficiaries' fraud claim asserted damages "flowing from the diversification of the 100% Eli Lilly stock concentration" and that the trust corpus had been injured because "[a]bsent the fraudulent conduct of the Bank, the 100% Lilly concentration would have been maintained." (R. 157). There is no conclusion by the court that an earlier action would have resulted in preventing the diversification; nor is that argument made by the Beneficiaries. Therefore, the court found no proximately caused injury.

Because the trial court did not find all the elements necessary to support the Beneficiaries' fraud claim, there is no error in not finding for them on that claim.

### 6. *Punitive Damages*

▓ The Beneficiaries also claim the trial court erred by not considering their claim for punitive damages. As Bank One brings to our attention, after the close of their case the Beneficiaries stipulated that they were not asserting a claim for punitive damages in the breach of trust action. (R. 3546–47). Therefore, they could not recover punitive damages on the breach of trust claim as a matter of law. Further, "compensatory damages are a prerequisite to an award of punitive damages." *Sullivan v. American Cas. Co.*, 605 N.E.2d 134, 140 (Ind. 1992). Because we affirm the trial court's conclusion that the Beneficiaries' claim for fraud failed, their claim for punitive damages also fails.

### 7. *Attorney Fees*

▓ In their final claim, the Beneficiaries assert the trial court erred by failing to award them attorney fees as mandated by statute. The trial court ordered Bank One to "bear its own attorney fees and costs of litigation without reimbursement from the

Trust." (R. 38). In its memorandum as to attorney fees accompanying its denial of the Beneficiaries' motion to correct error, the court said,

> In these actions, plaintiffs sought compensatory and punitive damages as well as removal of defendant as trustee on several different grounds. Defendant was removed as trustee for failure to give the beneficiaries complete and accurate information concerning the trust. In regard to all other allegations, including an allegation of breach of its fiduciary duty to make prudent investments, the defendant prevailed. The litigation was lengthy and complex.
>
> In these circumstances, where defendant was denied reimbursement from the trust for any attorney fees or costs of litigation, an award of attorney fees to plaintiff per I.C. 30–4–34–11 or I.C. 30–4–3–22 would be inequitable and unreasonable.

(R. 1220–21).

▓ In support of their claim, the Beneficiaries direct us to the first finding we cited, that "Bank One has breached this duty" (*see* Section 1. *Findings Conflict, infra*), and label this "an express finding that the Bank had breached its trust." Beneficiaries' Brief at 37. Accordingly, they argue, Ind.Code 30–4–3–11(b)(4) and 30–4–3–22 require fees be awarded. I.C. 30–4–3–11(b)(4) provides that a trustee who commits a breach of trust is liable to the beneficiary for attorney fees. I.C. 30–4–3–22 also provides for attorney fees when a beneficiary successfully removes a trustee who either 1) wrongfully holds property outside the trust, 2) commingles trust funds, or 3) as co-beneficiary, commits a breach of trust. The Beneficiaries' reliance on the latter statutory provision is misplaced, as it does not apply to the facts before us. As to the Beneficiaries' reliance on the former provision, we refer to our discussion in Section 1 as to the significance of the general statement about "this duty" being breached.

---

**5.** The conclusion reads:

A legal action to prevent the diversification brought prior to the diversification would have prevented additional time, expense and other difficulties resulting from the great delay in the filing of these actions. To attempt to assess compensatory damages, however, would require impermissible speculation.
(R. 1165).

Finally, we consider another statutory authority for removal of a trustee. Under I.C. 30–4–3–29(a), a trustee may be removed by the court. We have found this provision vests the court with power to remove a trustee but "does not prescribe when the court should exercise such power." *Matter of Guardianship of Brown*, 436 N.E.2d 877, 884 (Ind.Ct.App.1982). In such a matter, the court is acting within its equity powers. *Id.* Accordingly, removal of a trustee under I.C. 30–4–3–29(a) is "within the sound discretion of the probate court" and on appeal the "lower court will not be reversed except upon a finding of a clear abuse of discretion." *Id.* (quoting *Massey v. St. Joseph Bank and Trust Co.*, 411 N.E.2d 751, 753–54 (Ind.Ct.App.1980)).

The trial court removed Bank One as trustee because the misrepresentation about "Federal Bank Examiners' orders to diversify ... jeopardized" the trust relationship. The removal for this reason was not a clear abuse of discretion. Because we find the removal action was taken within the statutory authorization of I.C. 30–4–3–29(a), and because such removal mandates no award of attorney fees, the trial court did not err in failing to award same.

We affirm.

FRIEDLANDER, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent because I believe that the Bank's prudence regarding the decision to diversify and the diversification itself, standing alone, is meaningless when the Bank misrepresented facts to the Plaintiff Beneficiaries in order to effectuate the diversification. While I agree with the majority to the extent that it found that the Bank carried out the diversification in good faith and in full compliance with the prudent investor rule, I am unable to get beyond the fact that the Bank made a misleading communication regarding the mandate. Even assuming diversification was positively required, I still could not agree with the majority opinion, because I do not believe that a diversification carried out under the pretense of a misleading representation by a trustee can result in a prudent diversification under any circumstances. Because I agree with parts of the majority opinion, I will address the issues individually below.

First, I think that some additional facts bear mentioning regarding the Noel's family relationship with Lilly and hence their position on retaining the Lilly stock in the family. The settlor had been a life-long employee of Lilly and a close personal friend of the Lilly family. Harry S. Noel, during his lifetime, was the Director of Trade Relations at Lilly. Furthermore, the settlor's father-in-law, William A. Hanley, was vice-president and a director of Lilly. Hanley was the first Lilly engineer, and he invented and perfected the capsule making machine.

H. Jerome Noel, Sr., who acted as the spokesperson for the family until his death in 1986, vehemently and consistently opposed the diversification and attempted to work with the Bank to arrive at a compromise. On November 19, 1971, Trust Officer Thomas Jenkins wrote a letter to two of the beneficiaries stating that the Bank had been "mandated by the National Bank Examiners' audit staff and by our Internal Trust Committee to either diversify the concentration of Lilly stock or seek indemnification from all interested parties against any loss due to its retention." (R. 159). The Plaintiff Beneficiaries and their predecessor in income interest, H. Jerome Noel, Sr., had protested any diversification of the Trust prior to the receipt of this letter. The Bank sold the Lilly stock intermittently from 1972 to 1985. H. Jerome Noel, Sr. died in 1986. H. Jerome Noel, Jr., Plaintiff Beneficiary herein, began inquiring into the status of the Trust account in 1987. During the course of his dealings with the Bank, Trust Officer David Ayers divulged that there was no documentation of any mandate from the National Bank Examiners in the Trust file. Upon request, in September of 1989, the Plaintiff Beneficiaries received a Certification of Non–Existence from the Comptroller of Currency that no such order had ever been issued. (R. 485).

*Irreconcilable Conflict*

In its extensive entry, the probate court found that the Bank misrepresented to the

Plaintiff Beneficiaries the existence of a mandate from the National Bank Examiners, and that the Bank breached its fiduciary duty owed to the Beneficiaries to act with the utmost loyalty, honesty and in good faith. The court ordered removal of the Bank as trustee due to this breach of the trust relationship. The court went on then to find that the Bank fully complied with its duty under the prudent investor rule in diversifying the trust. The probate court therefore appeared to treat the misrepresentation and the propriety of the diversification as two separate issues. However, in its findings of fact as to the misrepresentation, the court specifically found that "[p]laintiffs would have brought an action to prevent the diversification, if they had know[n] no government mandate to diversify the Trust existed." (R. 1161). The probate court found in its conclusions of law that

Bank One was not required or mandated to diversify this Trust as a result of oral suggestions or comments made by the National Bank Examiner's Audit Staff in 1970 and 1971. The assertion that there was a mandate, without explanation of the legal effect of the comments was misleading and constituted misrepresentation.

(R. 1164).

The findings of the probate court that the Bank misrepresented the existence of a federal mandate to diversify the Trust and that the Bank acted with the utmost good faith are inconsistent. In my opinion, such findings send the message that if a trustee believes that diversification is a prudent course and in the best interest of the beneficiaries, the trustee is free to misrepresent facts to the beneficiaries in order to effectuate the diversification. I cannot agree with this apparent "ends justifies the means" approach. A panel of this court described the tremendous duty a trustee owes to the beneficiaries in a trust relationship as follows:

The trust relationship involves the exercise of the utmost good faith on the part of the trustees for the benefit and furtherance of the interest of the beneficiaries under the trust; a trustee must exercise in its management of the trust the care, skill, prudence and diligence of an ordinarily prudent person engaged in similar business affairs. In the absence of bad faith, or an abuse or unreasonable exercise of discretion by the co-trustees, the courts will not interfere with a decision to use a portion of the corpus for the purpose intended by the settlor.

*Matter of Nathan Trust,* 618 N.E.2d 1343, 1346 (Ind.Ct.App.1993), *reh'g denied, vacated on other grounds by* 638 N.E.2d 789 (Ind. 1994) (citing *Robison v. Elston Bank & Trust Co.,* 113 Ind.App. 633, 658, 48 N.E.2d 181, 190 (1943)). As our supreme court pointed out in its decision, the courts have consistently and stringently imposed the duty of undivided loyalty owing from trustee to beneficiary:

Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Malachowski,* 590 N.E.2d at 567 (citing *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (J. Cardozo); *see also Massey v. St. Joseph Bank and Trust Co.,* 411 N.E.2d 751, 754 (Ind.Ct.App.1980)).

The actions of trustees are also governed by statute in Indiana. The Bank seeks refuge under the prudent investor rule which has been made applicable by statute in Indiana and provides as follows:

In acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property for any trust, the trustee thereof shall exercise the judgment and care under the circumstances then prevailing which persons of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation

but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

I.C. 30-4-3-3(c)(1988). The majority finds that the Bank acted prudently in diversifying the Trust assets. Indeed, the Restatement (Second) of Trusts, section 228 provides that "[e]xcept as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments unless under the circumstances it is prudent not to do so." Restatement, sec. 228, p. 541. However, because I do not see these issues as independent of one another, I cannot agree with the majority opinion.

The probate court's findings that the Bank breached its duty of good faith, yet complied with its duty of prudent investment and duty of loyalty, I find to be irreconcilable. The majority opinion holds that the probate court's findings are consistent because they address two separate issues: (1) the Bank's fiduciary duty with regard to the investment of the Trust and the diversification of Trust assets; and (2) the misrepresentation regarding the Federal Bank Examiners. Notably, the supreme court in its opinion declined to find that under the prudent investor rule, diversification was positively required as a matter of law. *Malachowski,* 590 N.E.2d 559. However, even assuming that diversification was required, I do not feel that the propriety of the diversification and the means by which the diversification was accomplished can be separated.

I find that the probate court's findings are in irreconcilable conflict, and require reversal. Specifically, I point to the following conclusions of law:

CONCLUSION OF LAW 12. By virtue of the fiduciary relationship between the parties, Bank One owed Plaintiffs and H. Jerome Noel, Sr. a fiduciary duty to act with utmost loyalty, honesty and in good faith. Bank One has breached this duty.

CONCLUSION OF LAW 22. In diversifying the Trust, Bank One fully complied with its duty under the prudent man rule. Diversification was prudent both to avoid the risk of loss if the price of Lilly stock declined and to increase income. It was reasonable and prudent to incur capital gains taxes as part of the diversification. Bank One mitigated the tax effect by spreading the sales over time and, when possible, by recognizing losses in other Trust assets to offset the tax liability. The fact that Lilly had appreciated in the past did not make diversification imprudent. The past history of a stock does not foretell its future; and there is an excessive risk in holding a trust account 100% concentrated in the stock of any company. Bank One's position on diversification was reasonable, rational, and consistent with well-established principles of prudent trust investment. Bank One's decision to diversify was an honest and reasonable exercise of the investment discretion it was given in the Trust instrument. Bank One likewise complied with its duties under the prudent man rule in carrying out the diversification.

CONCLUSION OF LAW 23. The Plaintiffs' contention that Bank One breached the duty of loyalty to the beneficiaries is rebutted by the evidence. Bank One made the diversification decision based on the interests of the beneficiaries and not on its own interests. Bank One did not diversify in order to increase its fees or to obtain additional investment in Fund B. Bank One acted in accordance with its proper role as a Trustee. Bank One did not breach the duty of loyalty to the Plaintiffs or other Trust beneficiaries.

(R. 1166–1168). I disagree with the majority's finding that the Bank's misrepresentation of the reasons for the diversification did not effect the propriety of the diversification.

*Prudence of the Diversification Standing Alone*

I agree with the majority to the extent that it found that the probate court made specific and adequate findings regarding the circumstances surrounding the diversification decision. In finding that the Bank did not breach the duty of prudent investment, the probate court specifically concluded that "[i]t was reasonable and prudent to incur capital gains taxes as part of the diversification.

Bank One mitigated the tax effect by spreading the sales over time and, when possible, by recognizing losses in other Trust assets to offset the tax liability. The fact that Lilly had appreciated in the past did not make diversification imprudent." (R. 1167–68). The court also specifically found that "Bank One did not diversify in order to increase its fees or to obtain additional investment in Fund B." (R. 1168). The court further found that the Bank's trustee fees were reasonable, that the Bank did not diversify for the purpose of increasing its fees and that the Bank administered the Trust solely in the best interest of the Beneficiaries.

Deposition and trial testimony reveals that in the opinion of the Bank and the key personnel involved in the administration of the Trust, there was never any impropriety with regard to the handling of the Trust, the Bank never preferred its own interests over the interests of the Beneficiaries, the issue of fees or re-investment into the Bank's Common Funds never arose in connection with the decision to diversify the Trust. The record reflects that the Investment Review Committee and the Internal Trust Committee felt a constant pressure to diversify the Trust and discussed it regularly during their annual reviews. It was the opinion of the Bank that diversification was in the best interest of the Beneficiaries even considering the capital gains tax liability. However, prior to the final decision to diversify, the Bank had consistently approved the retention of the 100% concentration of Lilly stock for several decades. As late as the October 21, 1971, Internal Trust Committee meeting, the Bank approved retention of the Lilly stock due to the capital gains tax consequences of diversification. (R. 1802). Notably, when the diversification was carried out, the first sale of 3,736 shares levied approximately $75,000 of capital gains tax. (R. 1806).

Despite some contradictory evidence in the record, prior to the diversification, the Trust was invested entirely in one asset, which is generally an inappropriate way to invest a Trust and diversification has long been a sound investment principle. Furthermore, the payment of capital gains tax is a sure concern in the area of trust portfolio management. Although paying the tax will initially diminish the corpus, the assumption that diversification will conserve the value of the trust over time prevails.

Thus, I agree with the majority's finding that the diversification itself was likely carried out properly. However, because I choose not to view the diversification in a vacuum, to conclude that the diversification standing alone was proper is of no moment. Under the totality of the circumstances, I believe the diversification was accomplished through the fraud of a fiduciary.

*Court Approval For Diversification*

I also agree with the majority that the Bank could prudently diversify without seeking court approval.

The probate court found that

Bank One did not act improperly in failing to obtain Probate Court approval for the diversification. Bank One had complete investment authority. However, such a proceeding would have been helpful because of circumstances which raised legitimate questions concerning the propriety of diversification, such as:

a. The remarkable increase in the value of Lilly stock prior to diversification;

b. The significant capital gains taxes resulting from diversification;

c. The strong objections of most of the beneficiaries;

d. The fact that all but one of the income beneficiaries did not need or want increased income.[6]

Common Trust Fund B invested almost exclusively in tax-exempt municipal bonds, which in turn produced tax-free income. The income beneficiaries enjoyed dramatic increases in their after-tax income in the years following the diversification. However, the beneficiaries were all substantially endowed with other assets and most did not want or need increased income.

---

**6.** The evidence reflects that one of the beneficiaries under the Trust, Barbara Seawell, desired increased income from the Trust. Diversification in this case, aside from being a sound investment principle and method of risk reduction, also served the purpose of increasing income to the income beneficiaries. Diversification of the Trust did substantially increase the income generated by the Trust. Furthermore, the Bank's

(R. 1170). Also, the probate court found in its conclusions of law that the misrepresentation could have been cured had the Bank sought probate court direction regarding the propriety of the diversification. In its conclusions of law, the court found as follows:

> Bank One's breach of duty to communicate accurately would have been cured if the Bank had sought instruction of the Probate Court to determine:
>
> (a) Whether it was required to diversify the 100% Eli Lilly stock in order to comply with the prudent investor rule;
>
> (b) Whether the provisions of the Inter Vivos Trust provided Bank One sufficient protection if it continued to hold the 100% Lilly stock concentration;
>
> (c) Whether consent by the beneficiaries to the retention of 100% Lilly stock as opposed to 100% written indemnification would have sufficiently protected Bank One against any potential liability for failing to diversify; and
>
> (d) Whether the indemnification received from two-thirds of the beneficial interests was sufficient to protect Bank One against any liability as a result of its failure to diversify.

(R. 1163–1164).

The supreme court held that the settlor's intent was clearly expressed in the Trust instrument and the Bank was given the power to "invest and reinvest" the assets of the Trust. Specifically, the supreme court granted summary judgment for the Bank on the Plaintiff Beneficiaries' breach of fiduciary duty claim, finding that the Bank did not fail to follow the express intent of the settlor that the Lilly stock remain in the Trust because the trust instrument contained no such restriction. *Malachowski*, 590 N.E.2d at 566. While I agree that the power to invest was solely in the hands of the Bank under the Inter Vivos Trust, I point out that the settlor had always opposed any sale of Lilly stock outside of his family. In fact, under the testamentary trust, any transfer of stock required the assent of the advisors to the trustee, William Hanley, Jerome, Jr., and Nellie.

I.C. 30–4–3–3 (1988) specifically permits a trustee to invest and reinvest the trust estate without court authorization, except in certain limited circumstances. There are two limitations on the trustee's unbridled discretion. The first deals with co-trustees and is not applicable here. The second requires court authorization if the trustee's duty as trustee conflicts with his individual interests, or his interests in another fiduciary relationship. I.C. 30–4–3–5(a) (1988). However, the trial court specifically found that "Bank One made the diversification decision based on the interests of the beneficiaries and not on its own interests." (R. 1168).

I agree that the diversification was fully within the Bank's power as trustee, that the Bank possessed sole investment authority under the Trust instrument, that over-concentrated accounts are considered imprudent to retain under general trust principles and that diversification into tax-exempt securities is considered prudent under general tax principles. However, if the duty was to diversify, the Bank should have proceeded in an above-board manner instead of misrepresenting the existence of a federal mandate in order to overcome the resistance of the Beneficiaries. For this reason, I cannot concur with the majority opinion.

### Fraud

The majority next addressed whether the probate court's findings on the Beneficiaries' fraud claim were clearly erroneous and whether these findings support the court's judgment.

The supreme court denied the Bank's motion for summary judgment on the issue of its removal as trustee. The court found that the alleged misrepresentation of the mandate from the National Bank Examiner's Audit Staff gave rise to a breach of the Bank's fiduciary duty owed to the Beneficiaries and therefore precluded an entry of summary judgment for the Bank. *Malachowski*, 590 N.E.2d at 565. On remand, the probate court removed the Bank as trustee because of the finding that Bank One misrepresented material facts to the Beneficiaries.

With regard to the fraud claim, the court entered the following conclusions of law:

> 2. Bank One failed to give the beneficiaries complete and accurate informa-

tion concerning matters related to the administration of the Trust.

4. Bank One was not required or mandated to diversify this Trust as a result of oral suggestions or comments made by the National Bank Examiners' Audit Staff in 1970 and 1971. The assertion that there was a mandate, without explanation of the legal effect of the comments was misleading and constituted misrepresentation.

5. Bank One breached its duty to Plaintiffs when Bank One, by and through its agent, Thomas A. Jenkins, misrepresented the existence of a mandate from the National Bank Examiners requiring diversification of the 100% Eli Lilly stock concentration.

6. Bank One continued to misrepresent the existence of a mandate to diversify and failed to correct the misrepresentation in 1979 when it had an opportunity to do so.

7. The facts misrepresented were material to the beneficiaries in making decisions to effect their opposition to diversification.

8. The Plaintiffs had a right to rely and did rely, to their detriment, on Bank One's misrepresentation of the existence of a National Bank Examiners mandate.

9. But for Bank One's representation that it had been mandated by the National Bank Examiners to diversify the Trust, the beneficiaries would have brought a legal action to prevent the diversification before it occurred.

10. A legal action to prevent the diversification brought prior to the diversification would have prevented additional time, expense and other difficulties resulting from the great delay in the filing of these actions. *To attempt to assess compensatory damages, however, would require impermissible speculation.*

16. Plaintiffs' breach of trust action was timely filed within two years of the date on which the cause of action accrued. Plaintiffs' fraud action was timely filed within six years of the date on which the cause of action accrued.

18. Plaintiffs did not unduly delay filing their fraud action, but, instead, filed it originally in this Court on July 23, 1990[,] within ten months of receiving the Certificate of Non–Existence from the Comptroller of the Currency.

21. In making misrepresentations to the beneficiaries as to Federal Bank Examiners' orders to diversify, the Bank has so jeopardized its trust relationship as to require removal.

(R. 1163–1167) (emphasis provided). The court's order denying the Beneficiaries' motion to correct errors provides as follows:

In these actions, plaintiffs sought compensatory and punitive damages as well as removal of defendant as trustee on several different grounds. Defendant was removed as trustee for failure to give the beneficiaries complete and accurate information concerning the trust. In regard to all other allegations, including an allegation of breach of its fiduciary duty to make prudent investments, the defendant prevailed.

(R. 1220–21).

Actionable fraud consists of five elements: (1) representation of a past or existing fact; (2) which was false; (3) which the fraud feasor knew to be false or made with reckless disregard as to its truth or falsity; (4) upon which the plaintiff reasonably relied; and (5) which harmed the plaintiff. *R.R.S. II Enterprises, Inc. v. Regency Associates*, 646 N.E.2d 56, 58 (Ind.Ct.App.1995), *reh'g denied, trans. denied.*

The probate court's findings of fact are supported by the evidence to the extent that they include all of the necessary elements of fraud; however, the court's judgment is not supported by its findings. Although the court removed the Bank as trustee due to its misrepresentation, the court failed to award damages. Representatives of the Bank, including the author of the "mandate" letter, Thomas Jenkins, testified that he would not, nor would any member of the Bank, know-

ingly tell half-truths to a beneficiary, but he also admitted that he had no recollection of the letter. Jenkins testified that he believed the contents of the letter to be true at the time, and therefore possessed no intent to deceive the beneficiaries. Larry Pitts, who was a member of the Internal Trust Committee and present at the October, 1971, meeting with the National Bank Examiner's Audit Staff, testified that the Bank had no choice but to begin a program of diversification. The Bank had not obtained indemnity from all interested parties during the past year, and the Examiners demanded diversification or indemnification. Despite this self-serving testimony, my review of the record convinced me that there was no mandate, either written or verbal, from the National Bank Examiner to the Bank. Even assuming that the Bank did not intend to misrepresent the facts at the time the letter was written, the Bank allowed this fraud to continue and failed to correct it years later when it had the opportunity to do so. I believe that this evidence leads incontrovertibly to a conclusion opposite to the one reached by the probate court and therefore I would reverse and remand with instructions for the court to calculate and award damages and attorney fees.

*Compensatory Damages*

I further find that the probate court's refusal to award damages on the Beneficiaries' fraud claim was error. As set out in detail above, the court removed the Bank as trustee and refused to award damages because of the speculative nature of the injury. Based on my assessment of the probative evidence, I do not find that the computation of damages requires undue speculation; rather, the court would need only calculate the difference between the actual value of the Trust as of the date of judgment and the value the Trust would have had if the corpus had remained invested 100% in Lilly stock. This court has repeatedly said that "[n]o particular degree of mathematical certainty is required in awarding damages so long as the

amount awarded is supported by probative evidence, but it may not be based upon mere conjecture, speculation, or guess work." *Nahmias Realty, Inc. v. Cohen,* 484 N.E.2d 617, 621 (Ind.Ct.App.1985) (citing *Whiteco Properties, Inc. v. Thielbar,* 467 N.E.2d 433, 438 (Ind.Ct.App.1984)). Furthermore, when doubt exists as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer. *Indiana Tri–City Plaza Bowl v. Glueck's Estate,* 422 N.E.2d 670, 678 (Ind.Ct.App.1981). In my opinion, had the Beneficiaries known of the misrepresentation, they would have brought an action to have the Bank removed as trustee before the diversification began.[7]

Punitive Damages

Because I would remand for an award of compensatory damages based on the Bank's fraud, I would also remand for the trial court to consider the award of punitive damages. See *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 983 (Ind. 1993), *reh'g denied* (there can be no punitive damage award in the absence of a compensatory damage award).

Whether to award punitive damages is a matter left solely to the fact finder's discretion. There is no absolute right to punitive damages. *Miller Brewing Co.,* 608 N.E.2d at 983. In order to recover punitive damages the record must disclose

> clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.'

*Sizemore v. H & R Farms, Inc.,* 638 N.E.2d 455, 458 (Ind.Ct.App.1994) (citing *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind. 1993)). Because punitive damages are awarded in addition to damages which compensate for the specific injury, the injured party has already been awarded all that he is entitled to as a matter of law. *Orkin Exterminating Co. Inc. v. Traina,* 486 N.E.2d

7. Of some relevance on this point is that Jerome, Jr. is also the beneficiary of a trust created by his grandfather on his mother's side, William Hanley. This trust was also funded with Lilly stock. Indiana National Bank was co-trustee under this trust. When disagreement arose regarding the trust, the parties sought court intervention and direction. The trust was eventually split in 1985 to accommodate the beneficiaries. The resulting trust was maintained with 100% Lilly stock.

1019, 1022 (Ind.1986). In determining whether punitive damages should be awarded, the court should consider whether defendant's conduct was so obdurate that he should be punished for the benefit of the general public. *Id.*

Pursuant to my view that the Bank's conduct satisfies all of the essential elements of fraud, I would remand for the probate court to consider the Plaintiff Beneficiaries' request for punitive damages.

### Attorney Fees

I would also remand to the probate court for an award of attorney fees. I.C. 30–4–3–22(e) (1993) provides for attorney fees when a beneficiary successfully maintains an action to remove a trustee.[8]

In the motion to correct errors, the probate court said the following with regard to its denial of attorney fees for the Beneficiaries: "In these circumstances, where defendant was denied reimbursement from the trust for any attorney fees or costs of litigation, an award of attorney fees to plaintiff per I.C. 30–4–[3]–11 or I.C. 30–4–3–22 would be inequitable and unreasonable." (R. 1221).

Because the probate court removed the Bank as trustee due to its affirmative finding on the misrepresentation claim, the Plaintiff Beneficiaries are entitled to an award of attorney fees pursuant to I.C. 30–4–3–22(e).

### *CONCLUSION*

To say that the Bank's decision to diversify, standing alone, was prudent is meaningless in light of the fact that the Bank misrepresented the existence of the mandate in order to secure the Beneficiaries' acquiescence. In my opinion, the issues cannot be divorced. I would conclude that the evidence leads incontrovertibly to a conclusion opposite to that reached by the probate court.

I would reverse the judgment of the probate court and remand with instructions to enter judgment for the Beneficiaries and to

award compensatory damages based upon the difference between the value the Trust would have had but for the diversification and the actual value of the Trust,[9] with post-judgment interest to be calculated at a certain date following all proceedings on remand. I would further instruct the court to award the Beneficiaries their reasonable attorney fees, the amount of which to be determined in a post-trial proceeding; and to consider the Beneficiaries' request for punitive damages.

For the foregoing reasons, I dissent from the majority opinion.

---

**8.** I.C. 30–4–3–22(e) provides that "[i]f a beneficiary successfully maintains an action under subsection (a) of this section ... he is entitled to a judgment for reasonable attorney's fees." Subsection (a)(4) provides for an action to remove a trustee for cause and to appoint a successor trustee. I.C. 30–4–3–22(a)(4) (1988).

**9.** The damages to be awarded should be reduced to two-thirds interest of the actual damage calculation due to the fact that the Seawell branch of the family and her two issue are not parties to this litigation.